**MARTIN J. SIMKO CONSTRUCTION, INC., Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

**Appeal No. 87–1632.**

United States Court of Appeals, Federal Circuit.

July 6, 1988.

As Modified on Grant of Rehearing Aug. 1, 1988.

Alvin S. Nathanson, Nathanson & Goldberg, Boston, Mass., submitted for plaintiff-appellee.

Howard Lipper, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellant. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief was Lt. Col. Roger Graham, Dept. of the Air Force, Washington, D.C., of counsel.

Before RICH, Circuit Judge,
BALDWIN, Senior Circuit Judge, and
NIES, Circuit Judge.

BALDWIN, Senior Circuit Judge.

The United States appeals from that part of the decision of the United States Claims Court, *Martin J. Simko Construction, Inc. v. United States,* 11 Cl.Ct. 257 (1986), holding that the Claims Court lacked jurisdiction to entertain the government's fraud counterclaims and Special Plea in Fraud. We vacate that portion of the trial court's decision rejecting jurisdiction over the government's fraud-based defense and counterclaims, and remand with instructions to address the merits of those claims.

## BACKGROUND

This dispute arose over a contract, executed in 1978, between the United States Air Force and Martin J. Simko Construction, Inc. (appellee) for the construction of a jet fuel loading facility at Pease Air Force Base, New Hampshire. The contract was terminated for default in 1980 and this suit commenced in 1981. The facts relating to appellee's complaint and the substantive provisions of the contract are fully discussed in the trial court's opinion, and need not be repeated here. Appellee successfully asserted numerous claims seeking equitable adjustments to the contract, vacation of liquidated damages, and conversion from termination for default to termination for convenience. The government asserted counterclaims alleging fraud, invoking the Claims Court's counterclaim jurisdiction under 28 U.S.C. §§ 1503 and 2508 (1982). The government based its counterclaims on two statutes: 1) the False Claims Act, 31 U.S.C. §§ 3729 to 3731; and 2) the anti-fraud provisions of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 604. In its defense to appellee's complaint, the government invoked the Special Plea in Fraud under 28 U.S.C. § 2514 and requested forfeiture.

The trial court held that it lacked jurisdiction to consider the government's counterclaims and its Special Plea in Fraud because they were never the subject of a decision by the contracting officer. In rejecting jurisdiction over the counterclaims based on the anti-fraud provisions of the CDA, the trial court determined that section 605(a) of that act "adds a condition precedent to § 604" which precludes the government from raising any claim, includ-

ing counterclaims of fraud, if the government did not first "raise its counterclaims to the contracting officer for a written decision." 11 Cl.Ct. at 293. The trial court rejected jurisdiction over the counterclaim based on the False Claims Act, and over the Special Plea in Fraud [1] on the basis of this court's decision in *Joseph Morton Co. v. United States,* 757 F.2d 1273 (Fed.Cir. 1985) and the trial court's interpretation of section 605(a) of the CDA.

## OPINION

The issue before us is whether the Contract Disputes Act of 1978 requires that the government's CDA and False Claims Act fraud counterclaims, or a Special Plea in Fraud (however raised), first must be the subject of a contracting officer's (CO) decision before the Claims Court's jurisdiction is properly invoked.

*The Counterclaims.* The Claims Court has jurisdiction under 28 U.S.C. §§ 1503 and 2508 to consider counterclaims raised by the government. *See Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946) (purpose of counterclaim jurisdiction under what is now section 1503 is "to permit the Government, when sued in the Court of Claims, to have determined in a single suit all questions which involved mutual obligations between the Government and a claimant against it"); *Brown v. United States,* 524 F.2d 693, 703 (Ct.Cl.1975) (Court of Claims counterclaim jurisdiction predicated on section 1503 and Court has jurisdiction to hear counterclaims asserted under the False Claims Act). As noted above, the trial court held that section 605(a) of the CDA divested it of jurisdiction over the government's CDA counterclaim and that our opinion in *Joseph Morton* dictated the same result for the government's False Claims counterclaim and its Special Plea in Fraud.

■ Resolution of this case requires us to interpret section 605(a) of the CDA and the effects that section has on the government's fraud counterclaims and Special Plea in Fraud. When interpreting a statute we look first to the language of the statute itself. If that language is unambiguous our inquiry stops, unless there is a clearly expressed legislative intention contrary to the language of the statute itself. *See Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *LSI Computer Systems, Inc. v. United States International Trade Comm'n,* 832 F.2d 588, 590, 4 USPQ2d 1705, 1707 (Fed.Cir.1987). This is sometimes called the "plain meaning" rule. *See LSI,* supra.

■ The trial court applied the plain meaning rule to this case. It apparently determined that section 605(a) was free from ambiguity when it held that "all claims" as used in the second sentence of section 605(a) acts as a condition precedent to section 604. Appellee's argument similarly suggests that the term "all claims" takes precedence over section 604. Neither the trial court, nor appellee, cite anything in section 605(a) which clearly indicates that Congress intended that section to act as a condition precedent. Appellee argues that if Congress meant to exclude fraud counterclaims from section 605(a)'s coverage it would not have used the words "all claims." We disagree. It is not clear from the statute itself that Congress intended "all claims" to include every possible claim or counterclaim the government might bring. In fact, section 605(a) specifically removes from the CO's authority certain claims or disputes "for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle, or determine." Where the language of a statute does not clearly state the legislature's intent in enacting the law, we look to the

---

1. The government's plea was stated in a separate section of its Amended Answer entitled "Special Plea in Fraud." *See* Amended Answer of June 14, 1983, ¶¶ 18–28. However, the trial court treated the Special Plea in Fraud as a counterclaim. 11 Cl.Ct. at 294. It is irrelevant, in our opinion, whether the government raises the Special Plea as a separate defense or as a counterclaim. As we explain, *infra,* because the Special Plea is based on fraud, it need not be the subject of a contracting officer's decision before the Claims Court may consider it.

legislative history for an explanation of legislative intentions. *Alaskan Arctic Gas Pipeline Co. v. United States*, 831 F.2d 1043, 1046 (Fed.Cir.1987) ("[I]f the bare language of the statute fails to provide adequate guidance * * * the court must resort to the purpose and legislative history of the statute to determine" Congress' intent). Here, it is not clear from the language of sections 604 and 605(a) that the latter was intended to act as a condition precedent to the former. Thus, we shall examine the legislative history of the CDA for guidance.[2]

*Sections 604 and 605(a).* Section 604 of the CDA, the "anti-fraud" provision, states:

If a contractor is unable to support any part of his claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the part of the contractor, he shall be liable to the Government for an amount equal to such unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of his claim. Liability under this subsection shall be determined within six years of the commission of such misrepresentation of fact or fraud.

Section 605(a) provides in pertinent part: * * * All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. * * * The authority of this subsection shall not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, set-

tle, or determine. This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud.

The purpose of section 605(a) was repeated throughout the enactment process as conferring on executive agencies "all disputes" authority *to eliminate then existing differences between contract breach cases and disputes arising under the contract.*[3] *See generally Hearings.* From the outset, certain statutory claims by the government appear to have been excluded from what eventually became section 605(a). *See* H. Rep. No. 1556, 95th Cong., 2d Sess. 13 & 17 (1978). In the original drafts from both the House and Senate this "all disputes" clause was meant to empower agencies to decide all disputes except those specifically noted. *Id.;* S.Rep. No. 1118, 95th Cong., 2d Sess. 5 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5235, 5239. The only disputes excepted before amendment were those for "penalties or forfeitures prescribed by statute or regulation which another federal agency is specifically authorized to administer, settle, or determine." S. 3178, 95th Cong., 2d Sess. § 4 (1978); *see also* H.R. 11002, 95th Cong., 2d Sess. § 4 (1978). During hearings, several government agencies, including the Justice Department and the General Accounting Office, expressed concern that section 4 of the bills introduced (that section outlining the "all disputes" powers) did not clearly state that "the agencies do not have the authority to settle any issue involving fraud in the submission of the claim against the United States." *Con-*

---

**2.** Even if we accepted the trial court's conclusion that "all claims" can be interpreted to include every possible claim or counterclaim brought by the government, we still could not conclude that the trial court did not commit error. Our review of the legislative history of sections 604 and 605(a) convinces us that Congress did in fact intend to exclude fraud claims from the coverage of section 605(a). Thus, this would be one of those exceptional circumstances where a clearly expressed legislative intention should be held controlling.

**3.** This dichotomy arose as a result of the Supreme Court's decision in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), where the

Court noted the difference between breach claims and claims "under" the contract and held that claims which arise "under" the contract were subject to administrative resolution while claims for "breach" of contract could be resolved by filing suit against the government in the United States District Court or the Court of Claims. *See Contract Disputes: Hearings Before the Subcommittee on Administrative Law and Governmental Relations of the Committee on the Judiciary on H.R. 664 and Related Bills,* 95th Cong., 1st Sess. 83–86 (1977) (Statement of Irving Jaffe, Deputy Assistant Attorney General, Civil Division, Department of Justice) (hereinafter *Hearings* ).

tract Disputes Act of 1978: Joint Hearings Before the Subcommittee on Federal Spending Practices and Open Government of the Committee on Governmental Affairs and the Subcommittee on Citizens and Shareholders Rights and Remedies of the Committee on the Judiciary, 95th Cong., 2d Sess. 210–13 (1978) (Statement of Irving Jaffe) (hereinafter *Joint Hearings*). These agencies recommended clarifying the legislation to make clear that fraud issues are matters "outside the disputes resolution process." *Id.* The reason for this recommendation was outlined by the Justice Department which cited the Supreme Court case of *S & E Contractors v. United States*, 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972), as establishing that fraud claims are outside the dispute resolution process. *Joint Hearings* at 210; *see also* H.R.Rep. No. 1156 at 20–21.

These concerns were recognized in the Senate Report accompanying S. 3178. The Report indicates that Senator Chiles (the chief sponsor of the act) stated that it was not the intent of the legislators to include fraud claims in the disputes process, and promised that "language would be included to solve perceived problems." S.Rep. 1118, at 5, U.S.Code Cong. & Admin.News 1978, p. 5239. This was accomplished on the floor of the Senate when amendments to S. 3178 were introduced by Senator Byrd. The amendments eliminated the "all disputes" section, leaving only what is now section 604. 124 Cong.Rec. 36,266 (1978). In addition, section 6(a) of the bill was replaced with what is now section 605(a). *Id.* Conspicuously absent from this new section was any reference to the "all disputes" language removed from old section 4. The only language carried over from section 4 of the bill to what is now section 605(a) was the last sentence, which prohibited an agency head from settling, compromising, paying, or adjusting any claim involving fraud. *Id.* The accompanying *Explanation of Amendments—S. 3178* stated that these amendments were made to "eliminate the present problem whereby contested 'breach' of contract cases cannot be resolved within the current disputes process." *Id.* at 36,267. There was no intent

to recapture under agency jurisdiction fraud-based claims. The all claims language was substituted for the former "all disputes" language with the stated intent of eliminating a different, clearly identified problem and nothing more.

Having discerned the true purpose of the intent behind the inclusion of the words "all claims" in section 605(a), we now turn to an examination of section 604. The original S. 3178 did not include section 604. The section was added for the first time by the Senate Judiciary Committee as part of Senate Report 1118. *Compare* S. 2292, 95th Cong., 1st Sess. (1977); *and* S. 3178, 95th Cong., 2d Sess. (1978) (as introduced on June 8, 1978). In the report accompanying the bill [which, as amended on the Senate floor, was adopted by the House *in toto* and eventually became law, *see* 124 Cong. Rec. 37,074–76 (1978)], the Committee outlined its reason for adding section 604 as its desire to eliminate the "so-called horsetrading theory" then prevalent in claim disputes where fraud or misrepresentation is suspected. The Committee then went on to say:

> Consistent with the limitations expressed in section 4(a) excluding issues of fraud against the United States from the authority of contracting agencies to consider or resolve, *actions to enforce the Government's rights under section 4(b) would be solely the responsibility of the Department of Justice and would be instituted by the United States in a court of competent jurisdiction.* The procedures now utilized by procurement agencies for reporting suspected fraudulent activity to the Department of Justice would be equally applicable to section 4(b) matters. See, for example, ASPR 1–111.

> If such cases do arise *and are thus handled in the courts,* other parts of the claim not associated with possible fraud or misrepresentation of fact will continue on in the agency board or in the Court of Claims where the claim originated. (emphasis added.)

S.Rep. 1118 at 20, U.S.Code Cong. & Admin.News 1978, p. 5254. In the summary

of the committee amendments, the report specifically states that "language was added to insure that cases involving fraud are not subject to the provisions of section 4(a)" [the "all disputes" provision]. *Id.* at 8, U.S.Code Cong. & Admin.News 1978, p. 5242.

The Committee's report indicates quite clearly that Congress never intended fraud claims to be a part of the "all disputes" provision. The concerns of executive branch personnel were both noted and acted upon, and the intent of those actions was specifically mentioned. The etiology of the "all disputes" clause from a separate section to its inclusion in section 605(a) did nothing to change this clear legislative intent. At no time did Congress ever intend to include fraud claims in section 605(a). In fact, as the legislative history clearly shows, the changes made to sections 604 and 605(a) were designed, among other things, to clarify the exclusion of fraud claims from agency jurisdiction, while preserving some aspects of the all disputes language.

There is also evidence of Congress' intent to exclude section 604 claims from the strictures of section 605(a) in the second-to-last sentence of section 605(a), which removes from the CO's authority claims or disputes "for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle, or determine." Senate Report 1118 specifically states that the Department of Justice would be "solely" responsible for "actions to enforce the Government's rights under section [604]." S.Rep. 1118, at 20, U.S.Code Cong. & Admin.News 1978, p. 5254. The Committee definitively answered Executive concerns by stating that "procedures now utilized by procurement agencies for reporting suspected fraudulent activity to the Department of Justice would be equally applicable to section [604] matters." *Id.* Section 604, which was added by the Committee, was, therefore, never intended to be within the purview of the CO. In addition to the clearly expressed legislative intent to exclude fraud claims generally from the "all disputes" provision, Congress felt it necessary to emphasize that the Department of Justice would be the only federal agency with responsibility and power to enforce section 604. By designating a "specifically authorized Federal agency" to handle section 604 actions, Congress put section 604 claims within the exclusionary language of section 605(a).

Thus, we reject appellee's argument, and the trial court's holding, that section 605(a) is clearly a condition precedent to section 604. We do not agree that sections 604 and 605(a) are as unambiguous as the trial court felt. To the extent that they may seem unambiguous, this is one of those "rare and exceptional circumstances," *Rubin*, 449 U.S. at 430, 101 S.Ct. at 701, where such an "extraordinary showing of contrary intentions" exists in the legislative history, requiring us to look beyond the statute itself. *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984).

*The CDA Anti–Fraud Counterclaim.* We have determined that Congress did not intend fraud claims by the government to be included in the dispute process outlined by section 605(a) and that Congress never intended to include claims brought under section 604 to be within the agency dispute resolution process. Congress could not have intended "all claims" as used in section 605(a), to encompass a claim or counterclaim brought pursuant to section 604. Therefore, the trial court erred when it held that "all claims" constituted a condition precedent to section 604's fraud prohibition.

Appellee argues, however, that even though the trial court's holding on the government's CDA counterclaim was based solely on its interpretation of sections 604 and 605(a), this court's prior decision in *Joseph Morton* requires us to uphold the trial court's decision. We disagree. In *Joseph Morton* this court upheld the Claims Court's grant of summary judgment to the government, sustaining a termination for default, solely on the basis of the contractor's prior criminal convictions for false and fraudulent cost submissions during the performance of the contract in

question. 757 F.2d at 1275. The court first addressed whether certain counterclaims raised by the government required a contracting officer's decision before they could be asserted in the Claims Court. The court determined that the intent of 41 U.S.C. § 601 was to apply the CDA, at the contractor's option, to contracts signed before the CDA was enacted. 757 F.2d at 1279–80. Next, the court reasoned that the words "any claim" as they appear in the Note entitled "Effective Dates" following section 601 indicate a clear Congressional intent to include government claims once the contractor has elected to proceed under the CDA. *Id.* at 1280. Relying on sections 601 and 605(a), the court held that if the CDA applies, the government's counterclaims must first be the subject of a decision by the CO before they can be brought in the Claims Court. *Id.* at 1279. The court noted that the broad discretion granted by the CDA to the Claims Court to consolidate cases allows that court to stay a contractor's claim pending a decision on the government's counterclaim by the CO. *Id.* at 1280.

Finally, the court rejected arguments by the government to remove its claims from the CO's jurisdiction because the counterclaims were based on fraud. The court rejected the argument that the last sentence of section 605(a), precluding agency heads from acting on fraud claims, applies to CO's, reasoning that because the two are not equivalents for purposes of the CDA, that sentence was irrelevant to the case presented. *Id.* at 1280–81. Even if the two terms were equivalents, the court said, the legislative history of the CDA clearly indicates that Congress intended the word "claim" to "mean each claim under the CDA for money that is one part of a divisible case." *Id.* Because Morton's fraud had already been determined in a prior criminal proceeding (*Id.* at 1275), and *liability* for reprocurement costs and damages would not be an issue before the CO, the court concluded that the amount of money Morton owed the government should be treated as a separate claim, and should first be determined by the CO. The damages issue, the court held, was suffi-ciently segregable from liability to place the claim within section 605(a). *Id.* at 1281.

*Joseph Morton* was clearly limited to situations where liability for fraud had already been established, and only the quantum issue remained. Because such a determination did not require the CO to make a decision as to liability for the fraud claims themselves, the court found it consistent with the overall purposes of the CDA to require the CO's decision on damages before the Claims Court could assert jurisdiction over the government's counterclaims. The opinion in *Joseph Morton* recognized the special nature of fraud claims when it distinguished government claims or counterclaims for liability from those in which only the question of damages remained. *Joseph Morton* did not hold, as appellee suggests, that all counterclaims, including section 604 fraud counterclaims, must be decided by a CO before being raised in the Claims Court. That issue was not before the court, because Morton's liability had already been established, and only the damages issue remained. To the extent that the court considered the issue, care was taken to distinguish between government counterclaims for fraud and those for damages only. Our reading of *Joseph Morton* convinces us that the court did not resolve the issue presented here, but merely limited its holding to the peculiar facts presented in that case. The reference in *Joseph Morton* to the Claims Court's broad consolidation powers does not alter our conclusion. First, the possibility of bifurcated claims was squarely addressed by the Judiciary Committee. The Committee plainly stated its intent to separate fraud claims under section 604 from other contract claims when it stated:

> If such cases do arise *and are thus handled in the courts,* other parts of the claim not associated with possible fraud or misrepresentation of fact will continue on in the agency board or in the Court of Claims where the claim originated. (emphasis added.)

S.Rep. 1118, at 20, U.S.Code Cong. & Admin.News 1978, p. 5254. Second, the court, in *Joseph Morton,* noted that under the

CDA each claim is independent from the others, thus it does not affect the overall purpose of the CDA to separate fraud claims. Lastly, as appellee notes, but in a different vein, the Claims Court can use its broad consolidation powers to stay a trial where fraud counterclaims are raised, and a CO's decision is necessary on other claims related to the contract wherein the fraud claims arose.

The legislative history of section 604 of the CDA evidences a clear Congressional intent to exclude from the "all disputes" language of section 605(a) counterclaims by the government alleging fraud. In addition, the legislative history indicates that the penultimate sentence of section 605(a) can reasonably be interpreted to include actions brought pursuant to section 604. Thus, the Claims Court erroneously dismissed the government's section 604 counterclaim.

*False Claims Act Counterclaim.* The government also counterclaimed pursuant to the False Claims Act, 31 U.S.C. §§ 3729–31. In dismissing this counterclaim, the trial court relied primarily on *Joseph Morton.* The trial court also relied on its determination that the plain language of section 605(a) precluded its own exercise of jurisdiction without a decision by the CO. Here, too, the court erred. First, as noted above, *Joseph Morton* did not encompass nearly as broad a scope as suggested by the trial court's opinion. Second, the False Claims Act is a statute for penalties which another federal agency is specifically authorized to administer, settle, or determine.

 The False Claims Act is a civil liability statute. It entitles the United States to recover a money judgment from any person who presents a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729. The Claims Court has jurisdiction to hear government counterclaims asserted under the False Claims Act. 28 U.S.C. § 1503; *Brown,* 524 F.2d at 703. The trial court held that *Joseph Morton* precluded exercise of its jurisdiction over the government's False Claims Act coun-

terclaim until that claim was the subject of a CO's decision. Appellee argues likewise, treating the government's counterclaims identically.[4] We have determined that Congress intended that all fraud claims by the government be excepted from the "all disputes" authority granted CO's by section 605(a). Thus, government claims brought pursuant to the False Claims Act are not subject to section 605(a)'s requirement of a prior CO decision before the Claims Court may assert jurisdiction. However, section 605(a) provides an even clearer exception for the government's False Claims Act counterclaim.

In our analysis of section 605(a) of the CDA, we discussed the implication of the penultimate sentence, which excludes from 605(a)'s coverage claims or disputes for penalties prescribed by statute which another federal agency is specifically authorized to administer, settle, or determine. The False Claims Act is one such statute.

Section 3730(a) of 31 U.S.C. states:

The Attorney General diligently shall investigate a violation under section 3729 of this title. If the Attorney General finds that a person has violated or is violating section 3729, the Attorney General may bring a civil action under this section against the person. * * *

Subsection (b) permits an individual to initiate an action under the Act, but it and subsection (c) provide for control of the suit by the Attorney General, unless the government elects not to proceed with the action. For example, an action brought by a private party must be dismissed if the suit is based on evidence or information in the government's possession at the time the suit was instituted and the Attorney General decides that dismissal is appropriate. 31 U.S.C. § 3730(b)(4). Regardless of who initiates the suit, the Attorney General is *specifically* authorized to administer such claims for the government. No other agency is empowered to act under the statute.

---

**4.** For the same reasons discussed above, we do not agree that *Joseph Morton* controls the dispo-

sition of the government's False Claims counterclaim either. *See supra,* 545–46.

Even if Congress had empowered another agency to act under the False Claims Act, this would not affect the result here. Section 605(a) does not limit the CO's authority only if another federal agency has exclusive authorization under a statute or regulation. Rather, the penultimate sentence of section 605(a) requires only that another federal agency (in this case the Department of Justice) have *specific* authorization to "administer, settle, or determine" such claims or disputes. The False Claims Act gives the Attorney General this power. The Attorney General is charged with deciding whether there is sufficient evidence to bring suit on behalf of the United States. He is responsible for proceeding with all claims and appearing on behalf of the United States. He also is responsible for deciding whether to continue suits initiated by private persons. Finally, once an action is brought by a private person, dismissal of the suit requires the Attorney General's consent.

Congress could not have stated more clearly its intent to give the Attorney General specific authority to "administer, settle, or determine" claims or disputes under the False Claims Act. This specific authority places claims brought under the False Claims Act squarely within the exception to the "all disputes" authority of the CO carved out in section 605(a). For this reason, and because the legislative history to the CDA shows Congress' intent to exclude fraud claims from section 605(a)'s coverage, the Claims Court's dismissal of the government's False Claims Act counterclaim was error.

■ *The Special Plea in Fraud.* In addition to its two counterclaims, the government pled a Special Plea in Fraud under 28 U.S.C. § 2514. That provision requires the Claims Court, once it specifically finds fraud, to render a judgment of forfeiture against the plaintiff in suit. The Claims Court treated this Special Plea as a counterclaim, and determined that it lacked jurisdiction to hear the Special Plea because it was not the subject of a decision by the CO. The Claims Court did not discuss the Special Plea separately, but rejected it together with the government's False Claims Act counterclaim.

As with the fraud-based counterclaims raised in this suit, this defense was improperly denied for want of a prior decision by a CO. 11 Cl.Ct. at 293–95. The analysis of the legislative history of sections 604 and 605(a) of the CDA also applies to the government's Special Plea in Fraud. The exception for fraud claims is not limited to counterclaims, but is equally applicable to the Special Plea in Fraud under 28 U.S.C. § 2514. Just as the Claims Court did not distinguish between this defense and the False Claims Act counterclaim, for purposes of exercising jurisdiction, we discern no difference. Nor is *Joseph Morton* any more applicable to this defense than it was to the government's other fraud-based claims. The Claims Court's broad application of that case was misplaced. Therefore, it was also error for the Claims Court to reject jurisdiction over the government's Special Plea in Fraud.

## CONCLUSION

That part of the Claims Court's decision rejecting jurisdiction over the government's fraud-based defense and counterclaims is vacated. The case is remanded with instructions to address the merits of the government's fraud counterclaims and Special Plea in Fraud.

## COSTS

Each party shall bear its own costs on appeal.

**VACATED AND REMANDED.**