ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                      )
                                                 )
Mountain Movers/Ainsworth-Benning, LLC   )   ASBCA No.        62164
                                                 )
Under Contract No.     W9128F-12-D-0027   )


APPEARANCE FOR THE APPELLANT:        Timothy A. Furin, Esq.
                                       Ward & Berry, PLLC
                                       Washington, DC

APPEARANCES FOR THE GOVERNMENT:      Michael P. Goodman, Esq.
                                       Engineer Chief Trial Attorney
                                      William G. Latka, Esq.
                                       Engineer Trial Attorney
                                       U.S. Army Engineer District, Omaha


OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS ON THE
GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Pending before the Board is the motion to dismiss for lack of subject matter jurisdiction, filed by respondent, the United States Army Corps of Engineers (USACE or government). The government contends that the Board is without jurisdiction to entertain this appeal due to a suspicion of fraud involving appellant, Mountain Movers/Ainsworth-Benning, LLC (MM/AB) related to the contract in this appeal.

This appeal involves a 2014 task order for repairs to the Fort Peck Dam in Montana. MM/AB was delinquent in obtaining bonding for the task order, and in November 2014, the government terminated MM/AB for default, in a contracting officer's final decision that may have suffered from procedural problems. MM/AB informed the government that the bonding problems related to financial problems with joint venture partner Ainsworth-Benning. In a series of factually disputed communications in December 2014, the government contends that MM/AB made false representations regarding Ainsworth-Benning's participation in MM/AB. There is no dispute, however, that the government rescinded the termination for default, and MM/AB obtained the required bonds in January 2015, and performed the contract. In June 2019, MM/AB filed a claim for certain work on the project, and in August 2019, the contracting officer issued a final decision finding partial merit in the claim. MM/AB timely filed an appeal to the Board. Approximately two months after the appeal was docketed, the contracting officer rescinded his final decision, upon discovery of the purportedly fraudulent statements made by MM/AB in December 2014.

The government moves to dismiss MM/AB's appeal for lack of subject matter jurisdiction because the contracting officer rescinded his final decision based upon a determination of fraud. The government's motion essentially seeks to create a government right of removal that would allow the government to unilaterally compel contractors to litigate their appeals before the United States Court of Federal Claims. As the government's motion is directly contrary to the binding precedent of the United States Court of Appeals for the Federal Circuit, and our own precedent, we deny the government's motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES
OF THE GOVERNMENT'S MOTION

With the exception of the details of a December 2014 telephone conversation, the parties generally agree regarding the facts of this appeal. The Board is permitted to decide jurisdictional facts in resolving a motion to dismiss; however, as explained below, we do not find the disputed facts to be material to resolving the pending motion.[1]

On April 17, 2012, the government issued Solicitation No. W9128F-12-R-0030, restricted to USACE Region VIII small businesses, for design-build and construction services under a Multiple Award Task Order Contract (MATOC) intending to award up to five contracts (R4, tab 1 at USACE 5, 27-28). The solicitation required bidders to disclose "Contractor Team Arrangements" in their bids "(i.e., Mentor-Protege agreements, joint ventures, partnerships, etc.)" (R4, tab 1 at USACE 51). MM/AB asserts that it detailed the identities of its joint venture partners in its proposal (app. resp. at 3-4). On June 25, 2012, MM/AB received one of the MATOC awards (R4, tab 2).

On September 25, 2014, the government awarded to MM/AB task order No. W9128F-12-D-0027-0002 for rehabilitation of emergency gate control systems at Fort Peck, Montana, in the amount of $2,401,011.84 (R4, tab 3).

Pursuant to the task order, MM/AB was to submit performance and payment bonds within 10 days of its receipt of the notice of award, which occurred on September 25, 2014 (R4, tab 3 at USACE 397, 406). It is undisputed that MM/AB did not timely submit performance and payment bonds, and that the government did not follow-up with MM/AB regarding the missing bonds until sometime in November 2014. On November 24, 2014, Ms. Jacqueline Nettleton, President of

_____

[1] For this reason, we deny MM/AB's request for an evidentiary hearing.

2

MM/AB, sent an email to Thomas Westenburg, the Administrative Contracting Officer stating:

> I was notified late last week that the bonding company (Travelers) for MM/AB could not honor indemnifications from Ainsworth Benning.  Basically, their bonds are not good, James Benning has left the state with his family, literally in the middle of the night, another one of their partners (in a different company - which I am not involved in) has been arrested.
>
> I am uncovering more information literally hourly.

(R4, tab 5)  On December 3, 2014, Donald Miller, the USACE Contracting Officer (CO) terminated MM/AB for default (R4, tab 7).  The government did not issue a cure notice to MM/AB before terminating the contract for default (R4, tab 14 at USACE 511).

Between December 3 and December 18, 2014, Ms. Nettleton and CO Miller exchanged several emails regarding the termination for default (R4, tab 8).  In short, the government rejected MM/AB's proposal to have bonds issued in the name of Mountain Movers, rather than the MM/AB joint venture (R4, tab 8 at USACE 468-69).  By letter dated December 15, 2014, MM/AB's attorney advised CO Miller that the termination for default would be appealed to the ASBCA (R4, tab 9).  Based on subsequent documentation, it appears that the government was concerned that its failure to promptly enforce the bonding requirement could be held to constitute an implied waiver, requiring that it first issue a cure notice before terminating the contractor (R4, tab 14 at USACE 511).[2]  These communications culminated in a December 18, 2014 phone call that is the basis for the government's allegations of fraud.

On December 18, 2014, CO Miller and his supervisor, Lee McCormick, discussed the termination with Ms. Nettleton by telephone (R4, tab 014 at USACE 510).  The parties have submitted conflicting declarations regarding the specific statements made by Ms. Nettleton during the telephone call.  The government contends that, during the telephone call, its representatives stated that a major concern was the financial status of the MM/AB joint venture (R4, tab 14 at USACE 510).  According to the government, Ms. Nettleton represented that Ainsworth-Benning Construction, Inc. was the entity that was in financial difficulty but that a different company, Ainsworth Benning of Wyoming, Inc., was the joint venture partner of Mountain Movers Construction, Inc.

---

[2] The termination for default was subsequently rescinded, and is not before us.  We make no findings of fact as to whether the termination would have been sustained.

3

under the MATOC (*id.*). MM/AB contends that Ms. Nettleton actually stated that Ainsworth-Benning Construction, Inc. no longer had an interest in the MM/AB joint venture (app. sur-reply, ex. 1). Earlier that same day, Ainsworth-Benning Construction, had withdrawn from the MM/AB joint venture, leaving Mountain Movers as the sole member of the joint venture (app. sur-reply, ex. 1 at ¶¶ 16-17, decl. ex. 1). MM/AB further contends that Ms. Nettleton raised the possibility that, to resolve the bonding issue, Ainsworth-Benning of Wyoming, could take the place of Ainsworth-Benning Construction in the MM/AB joint venture, if the SBA approved of this change (app. sur-reply, ex. 1 at ¶¶ 10, 17). On January 5, 2015, Ms. Nettleton signed articles of incorporation for Ainsworth-Benning of Wyoming, which was organized as a South Dakota corporation (R4, tab 13 at USACE 501).[3] The South Dakota Secretary of State issued a certificate of incorporation for Ainsworth-Benning of Wyoming on January 12, 2015 (R4, tab 13 at USACE 499).

Following the telephone call, the Government issued MM/AB a cure notice, dated December 19, 2014 (R4, tab 10). The cure notice contained the government's recitation of the discussion during the telephone conversation the previous day:

> The detailed explanation that you provided stated that Ainsworth-Benning (A-B) has multiple subsidiaries, and that one of the subsidiaries, Ainsworth-Benning Construction, Inc., was the entity that was encountering managerial collapse that affected the remaining A-B subsidiaries['] ability to bond. You further explained that the Mountain Movers/ Ainsworth-Benning LLC JV is solvent because your JV is with Ainsworth-Benning of Wyoming, Inc., not Ainsworth-Benning Construction, Inc.
>
> . . . .
>
> Per the 3 December discussions and subsequent emails, you stated you will provide consideration in the amount of $48,000 if the Termination for Default was rescinded. The basis for consideration was stated that the original bonds bond fees have been reduced as part of the indemnification

---

[3] Adding to the confusion, Ms. Nettleton appears to have been a Vice President of a Wyoming corporation, named Ainsworth-Benning of Wyoming, that was dissolved for failure to pay taxes in 2012 (R4, tab 20 at USACE 571). It is not clear from the record whether Ms. Nettleton was suggesting replacing Ainsworth-Benning Construction Inc. in the MM/AB joint venture with the South Dakota corporation named Ainsworth-Benning of Wyoming, or with the Wyoming corporation, similarly named Ainsworth-Benning of Wyoming.

4

process for the bond for Mountain Movers/Ainsworth Benning JV. Mountain Movers/Ainsworth-Benning LLC also agreed not to appeal the Termination for Default with the Armed Services Board of Contract Appeals (ASBCA).

(R4, tab 10 at USACE 472) The cure notice then provides the government's conditions for holding the termination for default in abeyance:

> You are notified that the Government agrees to place the Termination for Default in abeyance until 31 December, 2014 to allow Mountain Movers/Ainsworth-Benning LLC to submit proper performance and payment bonds that are legally and fiscally sufficient to cure the issue of providing bonds. In doing so, Mountain Movers/ Ainsworth-Benning LLC also agrees not to appeal the Termination for Default with the ASBCA and accept a $48,000 reduction of contract price.

(R4, tab 10 at USACE 472-73) Ms. Nettleton signed the Cure Notice Receipt, and Agreement Acknowledged on December 30, 2014 (*id.* at USACE 473). The signature block had an option allowing her to agree or not agree with the terms contained in the cure notice. She checked the box that she agreed "with the terms contained herein" (*id.*). The government cites Ms. Nettleton's signature on the cure notice as proof that she made the alleged statements during the December 18, 2014 telephone call, while MM/AB contends that Ms. Nettleton's signature was only with regard to the "agreed" terms of the cure notice (viz. obtaining bonds by December 31, 2014, a reduction in contract price of $48,000, and not appealing the termination to the Board) (gov't mot. at 4; app. resp. at 8).

On December 30, 2014, the government issued an extension to the cure notice, allowing MM/AB until January 9, 2015, to submit its bonds (R4, tab 11). On January 22, 2015, CO Miller drafted a written determination to modify task order two by rescinding the termination for default (R4, tab 14). CO Miller indicated that Ms. Nettleton's representations regarding the Ainsworth-Benning corporate entity that made up the joint venture had satisfactorily addressed a major Government concern about the financial stability of MM/AB (R4, tab 14 at USACE 510). CO Miller then indicated that he had determined that the termination for default was improper because the government "took action that might be construed as a waiver to the contract delivery or performance date" and had not first issued a cure notice pursuant to Federal Acquisition Regulation (FAR) 49.402-3 (*id.* at USACE 511). CO Miller further determined that the construction was still needed and that it would be advantageous to the government to reinstate the delivery order (*id.*).

5

Effective February 2, 2015, the parties signed Modification No. 2, rescinding the termination for default and reducing the task order by $48,000 to $2,353,011.84 (R4, tab 15). That same day, the government issued MM/AB a notice to proceed (R4, tab 16). MM/AB subsequently performed the task order.

On April 12, 2019, MM/AB submitted a request for equitable adjustment (REA) to the contracting officer alleging entitlement to $535,056.87, plus interest, a contract extension of 538 days, remission of liquidated damages in the amount of $132,600 and the remaining contract balance of $181,121.23 (R4, tab 17). By letter dated June 27, 2019, MM/AB converted its REA to a certified claim (R4, tab 18). MM/AB's certified claim reduced the amount sought to $507,083.71 due to a revision of the amount sought associated with the reduction in bonding costs (*id.* at USACE 549-50 n.1). On August 26, 2019, CO Miller issued a contracting officer's final decision, finding partial merit to MM/AB's claim (R4, tab 19). MM/AB timely appealed to the Board by letter dated September 3, 2019.

On October 29, 2019, CO Miller issued a new final decision purporting to rescind the August 26, 2019 final decision (R4, tab 20). In the October 29 final decision, CO Miller indicated that he had recently obtained a copy of MM/AB's March 1, 2011 operating agreement indicating that Ainsworth-Benning Construction, Inc., and not Ainsworth-Benning of Wyoming, was a member of the joint venture (*id.* at USACE 570). Mr. Miller determined that Ms. Nettleton had knowingly misrepresented the identity of the Ainsworth-Benning entity that was a member of the MM/AB joint venture in December of 2014 following the termination for default (*id*). He also concluded that he had a reasonable suspicion that MM/AB had made fraudulent misrepresentations to the government in connection with that matter, which had the effect of divesting his authority to issue a final decision under FAR 33.210(b) (*id.* at USACE 571).

DECISION

I. Standard of Review

Mountain Movers bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988); *United Healthcare Partners, Inc.*, ASBCA No. 58123, 13 BCA ¶ 35,277 at 173,156. Pursuant to the Contract Disputes Act (CDA) 41 U.S.C. §§ 7101-09, a contractor may, "within 90 days from the date of receipt of a contracting officer's decision" under 41 U.S.C. § 7103 appeal the decision to an agency board. 41 U.S.C. § 7104(a). Our reviewing court, the Federal Circuit, has held that CDA jurisdiction requires "both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc.*

6

*v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).

When a motion to dismiss for lack of subject matter jurisdiction denies or controverts allegations of jurisdiction, only uncontroverted factual allegations are accepted as true for purposes of the motion, and other facts underlying the jurisdictional allegations are subject to fact-finding. *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The facts supporting jurisdiction are subject to fact-finding by the Board based on our review of the record. *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816; *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,016. However, when the factual dispute involves the allegation of a fact that is not jurisdictional, but an essential element of a claim for relief, this is a matter that goes to the merits. *Arbaugh*, 546 U.S. at 514.

II. Limitations On The Board's Jurisdiction Regarding Fraud

The government's motion is premised upon its novel theory it should be entitled to unilaterally remove litigation from the boards of contract appeals, whenever it suspects fraud. The government argues:

> Congress did not intend for the Government to have to defend claims involving fraud in agency boards, where the government has no ability to avail itself of the various defenses and fraud based counterclaims that would be available were the same contract claim to have been filed in federal court. *See* [*Martin J. Simko Construction, Inc. v. United States*, 852 F.2d 540, 543-44 (Fed. Cir. 1988)]. If the Board were to retain jurisdiction over this claim, it would provide a safe forum for contractors perpetrating fraud to sue the government while avoiding any liability for its related fraudulent behavior. Both the CDA and judicial economy considerations recommend the resolution of such cases in the Court of Federal Claims rather than the boards of contract appeals.

(Gov't mot. at 11) Thus, under the government's theory, a contracting officer could unilaterally withdraw a final decision at any point and thus, divest jurisdiction from an agency board of contract appeals. According to the government, the contractor would still have a remedy before the Court of Federal Claims (gov't. mot. at 9-10 n.1). However, the government has not explained how its interpretation of the CDA as divesting this Board of jurisdiction would not similarly divest the Court of Federal Claims of its jurisdiction, since the jurisdiction of both fora originate with a contracting

7

officer's final decision as specified in 41 U.S.C. § 7103. Further, the government's argument that the Board provides a "safe forum for contractors perpetrating fraud to sue the government while avoiding any liability for its related fraudulent behavior" (gov't mot. at 11) ignores the Board's ability to consider the affirmative defense of prior material breach, *Laguna Construction Co.*, *Inc. v. Carter*, 828 F.3d 1364 (Fed. Cir. 2016), the Board's ability to make findings of material misrepresentation of fact in holding a contract *void ab initio*, *Vertex Construction & Engineering*, ASBCA No. 58988, 14-1 BCA ¶ 35,804, and the government's ability to bring suit pursuant to the False Claims Act in Federal District Court. 31 U.S.C. § 3729.

The CDA provides the agency contracting officer with authority to decide claims submitted by contractors. 41 U.S.C. § 7103(a)(3). However, the CDA "does not authorize an agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud." 41 U.S.C. § 7103(c)(1). As noted above, the Board's jurisdiction depends on a valid contractor claim, and a contracting officer's decision on that claim. *M. Maropakis Carpentry*, 609 F.3d at 1327. Consistent with the CDA, the FAR provides that a contracting officer's "authority to decide or resolve claims does not extend to . . . (b) The settlement, compromise, payment or adjustment of any claim involving fraud." FAR 33.210. However, by the plain language of the CDA, the restriction on the contracting officer's authority applies to "any claim involving fraud" and not "any contract." Thus, the alleged fraud must relate to the "claim" and not just be a belief that there was fraud somewhere in the contract. *Joseph Morton*, *Co. v. United States*, 757 F. 2d 1273, 1281 (Fed. Cir. 1985).

Even if the contracting officer issues a final decision on a contractor claim involving fraud, the Board possesses jurisdiction to review that final decision if the final decision asserts a basis that the contracting officer is permitted to assert – that is, a basis other than fraud. *Daff v. United States*, 78 F. 3d 1566, 1572 (Fed. Cir 1996); *PROTEC GmbH*, ASBCA No. 61161 *et al.*, 18-1 BCA ¶ 37,010 at 180,244-45; *Sand Point Services*, *LLC*, ASBCA Nos. 61819, 61820, 19-1 BCA ¶ 37,412 at 181,859. However, if a contracting officer issues a final decision based solely upon a suspicion of fraud it is not a valid contracting officer's final decision and does not provide the Board with jurisdiction to entertain an appeal. *Medina Construction*, *Ltd. v. United States*, 43 Fed. Cl. 537, 556 (1999).

III. The Board Possesses Jurisdiction To Entertain The USACE's August 26, 2019 Final Decision Because It Was Not Based On A Finding Of Fraud, And The USACE's October 29, 2019 Final Decision Did Not Divest The Board Of Jurisdiction

The government asserts that the Board is without jurisdiction to entertain MM/AB's appeal due to the contracting officer's suspicion of fraud. According to the government the "Contracting Officer and this Board lack jurisdiction to render any

8

decision on a claim involving fraud" (gov't mot. at 1). According to the government, a "reasonable suspicion of fraud deprives the Board of jurisdiction" (gov't reply at 2). The government additionally contends that:

> It is of no moment that the Contracting Officer issued the [final decision finding partial merit to MM/AB's claim] without knowledge of MM's fraudulent misrepresentations that took place during the course of the contract. The Contracting Officer's prior reasons for the [sic] denying the claim are rescinded, because the agency (including the Board) does not have authority to raise or settle other issues when there is a reasonable suspicion of fraud.

(Gov't reply at 3) The government's statement is plainly incorrect as a matter of law. As explained above, a contracting officer may issue a final decision resolving a claim on a basis other than fraud, and the Board possesses jurisdiction to review such a decision. *Daff*, 78 F. 3d at 1572; *PROTEC GmbH*, 18-1 BCA ¶ 37,010 at 180,244-45; *Sand Point Services*, 19-1 BCA ¶ 37,412 at 181,859. Here, the contracting officer issued a final decision on August 26, 2019, finding partial merit to MM/AB's claim (R4, tab 19). The August 26 final decision was not based on a finding of fraud. The decision did not mention fraud. In fact, the final decision could not be based on fraud, because the contracting officer contends that he was unaware of the purported fraud at the time he issued his final decision (R4, tab 20 at USACE 570). MM/AB timely appealed to the Board on September 3, 2019. Thus, the Board possesses jurisdiction to entertain MM/AB's appeal.

The government's reliance on *Martin J. Simko Construction*, *Inc. v. United States*, 852 F.2d 540 (Fed. Cir. 1988); *Medina Constr.*, 43 Fed. Cl. at 555-56; and *Savannah River Nuclear Solutions*, *LLC v. Dept of Energy*, CBCA No. 5287, 17-1 BCA ¶ 36,749 is clearly misplaced. The government's citation of *Medina* and *Savannah River* are easily distinguishable. In *Medina*, the contracting officer explicitly premised the final decision on unproven allegations of fraud. *Medina*, 43 Fed. Cl. at 556. The court held:

> Even if the CO's final decision is read in the broadest possible light, the government has not established that the CO incorporated a reason, separate and distinct from the fraud allegations, for the denial of Medina's [termination

9

> settlement proposal] which would form a basis for its
> validity and thereby support this Court's jurisdiction.
> *Cf. Daff*, 78 F.3d at 1572.

*Id.* Thus, the *Medina* court recognized that it would possess jurisdiction to entertain a claim premised on a basis other than fraud pursuant to the Federal Circuit's holding in *Daff*, but that the final decision at issue in that case was solely based on fraud. Here, the contracting officer issued a final decision that could not have been premised upon fraud, because the contracting officer was not even aware of the purportedly fraudulent statements when he issued the August 26, 2019 final decision.

The facts in *Savannah River* are similarly distinguishable. In that appeal, the Department of Justice filed a False Claims Act suit against the contractor while the contractor's CDA claim was pending before the contracting officer. The contracting officer issued a letter to the contractor, indicating that he suspected that costs in the claim were fraudulent, and that he had referred the matter to the relevant agency officials, and that he was without authority to take action on the claim. *Savannah River*, 17-1 BCA ¶ 36,749 at 179,114. The Civilian Board of Contract Appeals held that the contracting officer was not authorized to issue a final decision, and that there could not be a deemed denial of a claim where the contracting officer was without jurisdiction to issue a final decision.[4] *Id.* at 179,115-16. We recently held in *ESA South, Inc.*, ASBCA Nos. 62242, 62243, 2020 WL 4355244 (June 9, 2020) that we possess jurisdiction to entertain an appeal on facts similar to those in *Savannah River*. In *ESA*, the contractor appealed from a deemed denial of its claim before the contracting officer issued a letter declining to issue a final decision due to a suspicion of fraud. *Id.*

The government cites *Martin J. Simko Constr.*, the only one of the three cited decisions that is binding authority for us, for the unremarkable proposition that Congress intended that fraud claims be resolved outside the disputes resolution process (gov't reply at 2-3). However, here, the contracting officer did not know of MM/AB's alleged fraud when he issued his final decision, and did not assert fraud as a basis for his final decision.

Similarly, we find the government's attempts to distinguish our holdings in *PROTEC* and *Sand Point* unavailing. The government contends that *PROTEC* does not control because the final decision in *PROTEC* did not mention fraud (gov't reply

---

[4] Decisions of the Civilian Board of Contract Appeals are not binding on us. As we hold that we possess jurisdiction to entertain MM/AB's appeal from the August 26, 2019 contracting officer's final decision, we do not reach the issue of whether, under proper circumstances, we would possess jurisdiction under a deemed denial theory.

at 24).  The government is apparently trying to distinguish *PROTEC* based on the October 29, 2019 final decision purporting to rescind the earlier, August 26, 2019 final decision.  However, the August 26, 2019 final decision, the document that created jurisdiction in this Board, similarly did not mention fraud.

The government also attempts to distinguish our holding in *Sand Point* because the contracting officer in that appeal did not refer the matter to the appropriate agency officials for investigation (gov't reply at 24).  As noted above, the contracting officer issued the August 26, 2019 final decision without referring the matter for a fraud investigation.  According to the government, the Board established a jurisdictional test in *Sand Point*, providing that the Board possesses jurisdiction to entertain an appeal involving fraud if "we do not have to make factual determinations of fraud" (*id.* at 24-25, quoting *Sand Point*, 19-1 BCA ¶ 37,412 at 181,859).  The government then contends that the Board would need to make factual determinations of fraud to adjudicate this appeal (gov't reply at 25).  We disagree.

Just as the contracting officer was able to review MM/AB's claim in rendering his final decision without reference to fraud, the Board can review the claim without reference to fraud.  As explained in *Sand Point*, a determination of fraud would require the board to "determine whether any incorrect statements were made knowingly and with the intent to deceive."  *Sand Point*, 19-1 BCA ¶ 37,412 at 181,859, (quoting *SIA Constr., Inc.*, ASBCA No. 57693, 14-1 BCA ¶ 35,762 at 174,984 (quoting *Pub. Warehousing Co., K.S.C.*, ASBCA No. 58078, 13 BCA ¶ 35,460 at 173,896)).  Here, the government alleges that the entire contract performance was fraudulent because the alleged misrepresentations induced the contracting officer to reinstate the contract (gov't reply at 23).  As noted above, the CDA jurisdictional prohibition applies to alleged fraud related to the *claim*, and does not apply to a general belief that there was fraud somewhere in the contract.  *Joseph Morton*, 757 F.2d at 1281.  At best, the government notes that MM/AB's claim seeks to modify the $48,000 contract price reduction discussed in the December 18, 2014 phone call and contained in the December 19, 2014 cure notice (gov't reply at 10, 25).  However, we can adjudicate this claim based on the terms of the modification.  We do not need to determine whether MM/AB agreed to the modification of the contract amount "knowingly and with the intent to deceive."  The simple fact that MM/AB agreed to a price adjustment with such terms, subject to any defenses MM/AB may assert, would allow us to adjudicate the claim.

Having found that we possess jurisdiction to entertain MM/AB's appeal from the August 26, 2019 final decision, we hold that the contracting officer's final decision dated October 29, 2019, purporting to rescind the August 26, 2019 final decision, does not divest us of jurisdiction.  The government argues that once the contracting officer rescinded the August 26, 2019 final decision, "there was neither a valid decision nor a deemed denial of the claim upon which to base CDA jurisdiction" (gov't mot. at 11).

11

However, the government is incorrect in asserting that the contracting officer's purported rescission of the August 26, 2019 would have any effect on our jurisdiction. The Board was vested with jurisdiction when MM/AB filed its notice of appeal on September 3, 2019. *Triad Microsystems*, *Inc.*, ASBCA No. 48763, 96-1 BCA ¶ 28,078 at 140,196. "Once the Board is vested with jurisdiction over a matter, the contracting officer cannot divest it of jurisdiction by his or her unilateral action." *Id.* (citing *Fairfield Scientific Corp.*, ASBCA No. 21151, 78-1 BCA ¶ 13,082 at 63,905-06 *aff'd on reconsid.* 78-2 BCA ¶ 13,429, *aff'd in part rev'd in part on other grounds* 611 F.[2]d 854 (Ct. Cl. 1979)). Moreover, the government's rescission of the August 26, 2019 final decision did not moot the issues before us, because MM/AB has not received all the relief requested, as would be the case if the government had withdrawn a government claim. *Shiloh Services*, *Inc.*, ASBCA No. 61134, 18-1 BCA ¶ 37,117 at 180,662 (citing *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007)).

## CONCLUSION

For the reasons stated above, the government's motion to dismiss is denied. The government is directed to answer MM/AB's complaint within 30 days of the date of this opinion.

Dated: August 7, 2020

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

12

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62164, Appeal of Mountain Movers/Ainsworth-Benning, LLC, rendered in conformance with the Board's Charter.

Dated:  August 7, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals