## LSI COMPUTER SYSTEMS, INC. Appellant,

v.

## UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,

and

## Southwest Laboratories, Inc., Intervenor.

### No. 87–1179.

United States Court of Appeals,
Federal Circuit.

Oct. 30, 1987.

Marvin N. Gordon & Ira B. Winkler, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, represented appellant. William F. Sondericker, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, of counsel.

John C. Kingery, Judith M. Czako and Lyn M. Schlitt, Office of Gen. Counsel, U.S. Intern. Trade Com'n, Washington, D.C., represented appellee.

Charles F. Schill and Karen J. Gray, Adduci, Dinan, Mastriani, Meeks & Schill, Washington, D.C., represented intervenor Southwest Laboratories, Inc., James B. Bear, John C. Lambertsen and Jerry T. Sewell, Knobbe, Martens, Olson & Bear, Newport Beach, Cal., of counsel.

Before DAVIS, NIES and NEWMAN, Circuit Judges.

## ORDER

DAVIS, Circuit Judge.

The United States International Trade Commission ("ITC") and Southwest Laboratories, Inc. ("Southwest") move to dismiss the appeal of LSI Computer Systems, Inc. ("LSI"), on the ground that LSI was not a party before the ITC. LSI opposes the motions. The ITC and Southwest further move to strike exhibit 1 of LSI's opposition to their motions to dismiss. LSI also opposes the motions to strike. All motions of the ITC and Southwest are herein denied.

### Background

On August 9, 1985, the ITC instituted an investigation under 19 U.S.C. § 1337 ("section 337") pursuant to a complaint filed by Southwest. The named respondents were foreign producers of lighting switches that allegedly infringed Southwest's U.S. Patent No. 3,715,623 (" '623 patent"). LSI, a United States company that made electrical circuits used by the foreign producers as component parts in the accused devices, was not itself a respondent in the section 337 investigation.

During the ITC investigation, LSI was subpoenaed for production of documents. Also, a deposition of LSI's Vice-President of Engineering was taken by counsel for the complainant and the Commission's investigative attorney. However, LSI did not attempt to intervene and, hence, was not at any time a party in the administrative proceeding before the ITC.

On May 14, 1986, the administrative law judge ("ALJ") issued an initial determina-

tion finding that the products of certain respondents infringed certain claims of the '623 patent and that their importation into the United States was a violation of section 337. The ALJ also found that other claims of the '623 patent were invalid and that the products of certain other respondents did not infringe the valid claims. LSI's products were component parts of the latter class. Complainant Southwest and the Commission Investigative Attorney filed Petitions for Review with the Commission.

The full Commission granted the petitions, and reversed the ALJ's initial determination that certain patent claims were invalid. The Commission determined that the lighting switches of all respondents infringed the '623 patent and that there was a violation of section 337. A corresponding Exclusion Order was issued and subsequently went into effect. The Exclusion Order encompassed LSI's products when they constitute components of the excluded products.

None of the respondents participated meaningfully in any stage of the ITC's administrative proceeding, and some were found in default. LSI, who is not a respondent, and who did not attempt to intervene in the ITC's proceeding, appealed from the final determination of the Commission. Southwest has intervened to participate in this appeal.

### Discussion

Section 337(c) of the Tariff Act of 1930, 19 U.S.C. § 1337(c), as amended by the Trade Act of 1974 (Pub.L. 93–618, Title III, § 341, 88 Stat. 2054), provides:

(c) Determinations; review

... *Any person* adversely affected by a final determination of the Commission under subsection (d), (e), or (f) of this section may appeal such determination to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of title 5. [Emphasis added.]

Neither Southwest nor the ITC has presented persuasive arguments that LSI is not adversely affected.[1] Consequently, the issue before us is whether LSI is a "person" entitled to appeal under 19 U.S.C. 1337(c).

Both Southwest and ITC urge us to recognize a general rule that one who is not a party before an administrative proceeding is not entitled to appeal. Southwest and ITC assert that that rule is long-standing and well-established, citing authorities. However, the argument misses the point. Here, there is a statutory provision governing who may seek judicial review of an ITC final determination.

The term "person" is not defined either by the Act or ITC's implementing regulations. Southwest and ITC maintain that "person" was intended by Congress to have a meaning *no different* than "party." "Party" is defined by 19 C.F.R. § 210.4(b) as "each complainant and respondent in the investigation, the Commission investigative attorney, and each person permitted to intervene pursuant to 19 C.F.R. § 210.26." LSI concedes that it was not a "party" to the administrative proceeding before the ITC, but asserts standing to appeal on the basis that it is a "person" adversely affected by the Commission's final determination, within the statutory meaning of 19 U.S.C. § 1337(c).

Section 337 of the Tariff Act of 1930 is a reenactment of Section 316 of the Tariff Act of 1922. It provides for appeal from the Commission's determinations, but limited it to importers and consignees who were accused of unfair practices, excluding complainants. Section 337 embodied that same limitation on standing to appeal, prior to its amendment in 1974. Through the Trade Act of 1974, Section 337(c) was amended, and now grants standing to appeal to ANY PERSON ADVERSELY AFFECTED BY A FINAL DETERMINATION OF THE COMMISSION.

---

1. It is undisputed that LSI makes circuits used as component parts in the infringing lighting switches excluded by the Commission's order. In this instance, at the least, LSI is directly affected by the Exclusion Order.

For statutory interpretation, we recognize the plain meaning rule for construing explicit language, as the Supreme Court has stated:

We have repeatedly recognized that "[w]hen ... the terms of a statute [are] unambiguous, judicial inquiry is complete, except 'in "rare and exceptional circumstances." ' " *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (citations omitted). In the absence of a "clearly expressed legislative intention to the contrary," the language of the statute itself "must ordinarily be regarded as conclusive." [Citation omitted.]

*United States v. James*, —— U.S. ——, ——, 106 S.Ct. 3116, 3122, 92 L.Ed.2d 483, 494 (1986); *see also Burlington No. R. Co. v. Oklahoma Tax Comm'n*, —— U.S. ——, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987). Similarly, in *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984), the Court stated:

While we now turn to the legislative history as an additional tool of analysis, we do so with the recognition that only the most extraordinary showing of contrary intentions from those data would justify a limitation on the "plain meaning" of the statutory language. When we find the terms of a statute unambiguous, judicial inquiry is complete, except in " 'rare and exceptional circumstances, [sic].' " [Citation omitted.]

Indeed, the "plain meaning" rule has been applied by our predecessor court, the United States Court of Claims:

The general rule of statutory construction followed by this court is that the bare language of the statute is to be given its ordinary meaning "unless overcome by a persuasive showing from the purpose or history of the legislation ... this court will not bend or strain the words of a statute to change its meaning unless there is a persuasive and clear showing that Congress did not intend for the letter of the statute to prevail."

*Ocean Drilling & Exploration Co. v. United States*, 600 F.2d 1343, 1347–48, 220 Ct.Cl. 395 (1979).

The plain meaning of "person" in the statute is inconsistent with limiting standing to appeal to just parties in the proceeding below. Because Southwest and ITC's contention runs counter to the plain meaning of the statutory language, it may prevail only if a contrary legislative intent is clearly shown by the legislative history. However, the legislative history is meager and inconclusive.

The House Report contains the following passage:

Any order of the Commission entered in any proceeding would be subject to judicial review in the CCPA within such time after said action is made and in such manner as appeals may be taken from decisions of the U.S. Customs Court. *A complainant as well as an importer would have the right to judicial review of a Commission proceeding such as is contemplated by the committee's amendment.*

H.Rep. No. 571, 93rd Cong., 1st Sess. 78 (1974), U.S.Code Cong. & Admin.News 1974, p. 7186 (Emphasis added.) The Senate Report states:

Further, under § 337(c), as amended, the Committee would extend the right to judicial review of final Commission determinations (of whether there is a violation of section 337 or whether there is reason to believe there is a violation) to complainants before the Commission, as well as continuing to permit owners, importers, and consignees of the articles involved in such determinations to secure such review.

S.Rep. No. 1298, 93rd Cong., 2d Sess. 196–97 (1974), U.S.Code Cong. & Admin.News 1974, pp. 7186, 7329.

The legislative history makes clear that Congress at least intended to give complainants standing to appeal. However, that is not a showing that Congress did not also contemplate giving standing to appeal to non-parties who are adversely affected by the Commission's final determination as plainly provided by statute—at least where, as here, the appellant's product is included in the products excluded by the Exclusion Order. There is no legislative history di-

rectly on point in reference to non-parties who are adversely affected.

Nevertheless, the ITC makes an additional argument that the 1974 amendment as originally enacted showed that Congress did not intend to deviate from the rule that a non-party may not appeal. The original amendment provided that the Court of Customs and Patent Appeals shall have jurisdiction to review a Commission determination "in the same manner and subject to the same limitations and conditions as in the case of appeals from decisions of the United States Customs Court." Pub.L. 93–618, § 341(a), 88 Stat.1978, 2054. The language "the same limitations and conditions" is very broad; what it includes is less than clear. In any event, it apparently refers to the court's manner of review, where proper jurisdiction and standing are presumed. Moreover, the provision was subsequently eliminated by Congress in the Customs Courts Act of 1980, and is no longer in section 337. The ITC asserts that the provision was deleted to clarify the appellate standard of review, further suggesting that it does not pertain to the issue of standing. Under such circumstances, we cannot say that that history clearly supports the ITC's position. The parties on appeal have not identified any additional legislative history suggestive of the relevant legislative intent behind the meaning of "person" in section 337, and we are aware of none. Because the plain and ordinary meaning of "person" in the current circumstances is not contrary to clearly expressed legislative intent, we decline to construe "person" in a manner contrary to that plain meaning.[2]

Both Southwest and the ITC assert that not construing "person" to mean "party" would lead to judicial chaos and absurd results, for any "person" will then be able to appeal. Though we agree that an absurd construction of a statutory provision should be avoided, *WITCO Chemical Corp. v. United States,* 742 F.2d 615, 619 (Fed. Cir.1984), the construction reached here does not lead to absurd results, nor to judicial chaos. The Supreme Court has recognized similar language in other statutes providing appellate standing to "all persons adversely affected." *See, e.g., Clarke v. Sec. Indus. Ass'n,* —— U.S. ——, 107 S.Ct. 750, 755 n. 8, 93 L.Ed.2d 757 (1987). Moreover, in *Clarke,* the Supreme Court applied a "zone of interest" test for determining standing to appeal from an administrative decision, first set forth in *Ass'n of Data Processing Service Org., Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970), where the statute involved is without an explicit provision specifying who may appeal. Thus, even when a statute does not explicitly provide for appeals by non-party "persons," appellate standing is not necessarily limited to parties only. That result reflects the Supreme Court's recognition in *Data Processing* of a "trend ... toward [the] enlargement of the class of people who may protest administrative action." 397 U.S. at 154, 90 S.Ct. at 830. *See also Clarke,* 107 S.Ct. at 756. At the very least, LSI has standing to appeal because its product is a component part of the excluded lighting switches.

Moreover, the plain meaning of section 337 does not simply permit any "person" to appeal without qualification, as that "person" must also sufficiently demonstrate that he is indeed *adversely affected* by the Commission's final determination. Those who do not have a genuine stake in the outcome of the investigation are unlikely to be able to make that showing. We are unpersuaded by Southwest and ITC's argument that permitting any person who is truly adversely affected to appeal, as plainly provided by explicit statutory language, is absurd or will result in judicial chaos.

---

2. Even the ITC's own regulation on appellate standing refers to "persons," not "parties." 19 C.F.R. § 210.71 ("Any person adversely affected by a final determination of the Commission ... may appeal such determination to the United States Court of Appeals for the Federal Circuit"). There are also ITC regulations governing the proceedings of a section 337 investigation which refer to "persons" when it is clear that not only "parties" are intended. For instance, 19 C.F.R. § 210.26 prescribes the conditions under which a "person" may intervene; thus, "person" obviously cannot mean "party."

We have considered all other arguments of Southwest and the ITC, but find them unpersuasive.[3]

Accordingly,

IT IS ORDERED THAT:

(1) The motions to dismiss are denied.

(2) The motions to strike exhibit are denied.

---

**3.** Regarding Southwest and ITC's motions to strike LSI's exhibit, a letter from LSI to the Commission investigative attorney, the exhibit shows only that LSI did not simply "do nothing" during the administrative investigation as alleged by Southwest and the ITC; there exists no reason for striking it as such.