**SEA–LAND SERVICE, INC.,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 90–1311.

United States Court of Appeals, Federal Circuit.

Nov. 30, 1990.

Gerald A. Malia, Ragan & Mason, Washington, D.C., argued for plaintiff-appellant. With him on the brief were John E. Vargo and Michael F. DiCroce. Also on the brief was Robert S. Zuckerman, Deputy General Counsel, Iselin, N.J., of counsel.

Mark S. Sohaczeswky, Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

Before RICH and MARKEY, Circuit Judges, and BALDWIN, Senior Circuit Judge.

BALDWIN, Senior Circuit Judge.

## DECISION

Sea–Land Service, Inc., ("Sea–Land") appeals the judgment of the U.S. Court of International Trade holding that certain refrigerated containers were properly classified by the Customs Service as refrigerators and refrigerating equipment under item 661.35 of the Tariff Schedules of the United States ("TSUS").* *Sea–Land Service, Inc. v. United States,* 736 F.Supp. 1137 (Ct.Int'l Trade 1990). We affirm.

## BACKGROUND

The merchandise at issue is 42 intermodal refrigerated freight containers imported by Sea–Land. These containers consist of insulated aluminum container boxes with refrigeration units assembled to the boxes. The temperature controlling device circulates heated or cooled air within the container so that the proper storage temperature for perishable goods may be maintained.

Prior to entering the United States, the refrigerated containers operated in international service as "instruments of international traffic." In the United States, these containers were diverted to "point-to-point" local traffic within the United States, or were otherwise withdrawn from their use as instruments of international traffic.

In 1983, Congress passed Public Law 97–446 (96 Stat. 2329, 2342, section 143) providing for duty-free entry of certain freight containers. The exemption from duty was entered as item 910.80 TSUS:

Freight containers specially designed and equipped to facilitate the carriage of goods by one or more modes of transport without intermediate reloading, each having a gross mass rating of at least 40,000 pounds (provided for in 640.30, part 3A, schedule 6).

The purpose of Public Law 97–446 was to relieve importers and the Customs Service of the administrative and financial burdens

of tracking the containers while they were in the United States. The tracking was necessary to determine which containers were returned to international use and which were diverted to domestic use and subject to a duty. *See* 19 U.S.C. § 1322(a) (1988) and 19 C.F.R. 10.41a (1989) (instruments of international traffic not subject to duties).

Sea–Land contends that their refrigerated containers should be classified under item 640.30, TSUS (from schedule 6, part 3), "Drums, flasks, casks, cans, boxes, lift vans, and other containers ... all the foregoing, of base metal, chiefly used in the packing, transporting, or marketing of the goods." Under such a classification, the Sea–Land containers would qualify for duty-free treatment pursuant to item 910.-80 TSUS.

The Customs Service determined that the Sea–Land refrigerated containers, while a type of container within the freight container industry, are specifically excluded from classification under item 640.30 TSUS, by headnote 1(i) of Schedule 6, part 3, subpart A, which provides:

... This subpart ... does not include—
(i) containers with provision made for circulating heat or cooling fluids between the walls, or mechanical or thermal equipment such as agitators, heating or cooling coils, or electrical elements (see parts 4 and 5 of this schedule).

Instead, the Customs Service classified the refrigerated containers under Schedule 6, part 4, subpart A, item 661.35 TSUS, "Refrigerators and refrigerating equipment, whether or not electric, and parts thereof." The trial court agreed with the Customs Service and judgment below was entered accordingly.

## ISSUE

Whether the trial court erred in determining that the imported refrigerated containers were properly classified under item 661.35 TSUS.

---

* Pursuant to the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1147, 1153, effective January 1, 1989, the

Harmonized Tariff Schedule (HTS) replaced the TSUS. The merchandise at issue entered the United States prior to the enactment of the HTS.

OPINION

## I. *The Statute*

█ Since Sea–Land's central contention involves a question of law, we address it first. Sea–Land argues that the Customs Service's classification is incorrect because Congress intended that freight containers with a refrigerating capacity be included in the duty-free provision of item 910.80 TSUS.

Whether the refrigerated containers are included in item 910.80 TSUS is a question of statutory construction. "In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

The language of the statute is clear and unambiguous. Item 910.80 TSUS allows for the duty free treatment of freight containers specifically "provided for in 640.30, part 3A, schedule 6." While most freight containers probably fall under this provision, the headnote to item 640.30 specifically exempts "containers with provision made for ... thermal equipment such as agitators, [or] heating or cooling coils." Freight containers with a refrigerating capacity, such as those at issue here, are specifically excluded from item 640.30. Therefore, a plain reading of the headnote effectively prevents freight containers with the refrigerating capacity from inclusion under 910.-80 and, consequently, they do not qualify for duty-free treatment pursuant to the statute.

## II. *The Legislative History*

Despite the clear wording of the statute, Sea–Land advances the contrary notion that the legislative history supports its interpretation of the statute. Sea–Land opines that Congress intended the term "freight container" to also be descriptive of freight containers with a refrigerating ca-

pacity despite the language of item 910.80. It is well settled law that the plain and unambiguous meaning of the words used by Congress prevails in the absence of a clearly expressed legislative intent to the contrary. *See Mansell v. Mansell*, 490 U.S. 581, 592, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989); *LSI Computer Sys. v. United States Int'l Trade Comm'n*, 832 F.2d 588, 590 (Fed.Cir.1987).

A careful examination of the legislative history provides little information. Nowhere in the legislative history does Congress clearly address the intended scope of the proposed statute. Refrigerated freight containers are mentioned in an early legislative hearing as a type of freight container, but no substantive comment was made concerning the issue presented here. *See Leather Apparel and Miscellaneous Bills: Hearings before the Subcommittee on Trade of the Committee on Ways and Means, House of Representatives*, 96th Cong., 2d Sess. 97 (1984).

Whatever inferences may be drawn from the legislative history, we agree with the trial court "[t]hat those supporting or opposing the legislation make statements as to their interpretation of legislation appears a weak basis on which to conclude that the words of the statute do not mean what they say." *Sea–Land*, 736 F.Supp. at 1141. We also agree with the trial court's conclusion that the sparse legislative history is far too tenuous to support Sea–Land's interpretation when the plain language of the statute is so straightforward.

Although we do not entirely discount the possibility that the Congress had intended to include refrigerated containers in the duty-free provision, "it is not for us to distort the statute to 'fix' what Congress either intentionally or inadvertently failed to anticipate." *Unimed, Inc. v. Quigg*, 888 F.2d 826, 829, 12 USPQ2d 1644, 1647 (Fed. Cir.1989); *see Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 51, 75 L.Ed. 156 (1930) ("Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise ob-

jectionable. But in such case the remedy lies with the law making authority, and not with the courts.").

### III. *The Classification*

■ Having determined that the containers are not within the scope of item 910.80, the issue then is whether the Customs Service classification is correct. The issue of whether particular imported articles come within a definition of a classification term is a question of fact subject to the clearly erroneous standard of review. *Simod America Corp. v. United States,* 872 F.2d 1572, 1576 (Fed.Cir.1989). *See also Richards Medical Co. v. United States,* 910 F.2d 828, 830 (Fed.Cir.1990); *Hasbro Indus., Inc. v. United States,* 879 F.2d 838, 840 (Fed.Cir.1989). "The classification of the Customs Service is presumed to be correct and the burden of proof is upon the party challenging its classification." *Simod,* 872 F.2d at 1576 (citing 28 U.S.C. § 2639(a)(1) (1988)).

As noted above, the Customs Service classified the refrigerated freight containers as refrigerators and refrigerating equipment under item 661.35 TSUS. Each container is so designed that, *without modification,* the refrigeration unit may be attached. Testimony at trial established that the container is designed for use with a temperature control device, that the container is used primarily in the refrigeration mode, and that the device is only removed for maintenance. The container is imported with the temperature control device attached. The container will not function and operate for the purpose for which it was intended without the refrigeration unit. While the non-refrigeration function of the container (e.g. intermodal transportation and storage of cargo) is important, it remains ancillary to the primary function of refrigerating goods. It must be noted that each container is particularly designed for the refrigerating function, including: cutouts to accommodate refrigeration units; refrigerating units with evaporator, condenser, compressor, fan, and heating and cooling coils; heavy insulation in the walls, roof and floors; and special air vents and hollow floors to facilitate the circulation of cooling air. These features are all indicia of a product which is used as a refrigerator or as refrigerating equipment.

In addition to the trial testimony, the trial court determined that lexicographical sources indicate that the containers fall within the common meaning of the term "refrigerating equipment." *Sea–Land,* 736 F.Supp. at 1139 (*e.g., Webster's Third New International Dictionary* at 1910, definition of "refrigerator [railroad] car": "a freight car constructed and used primarily as a refrigerator in transporting [perishables]."). The trial court also found that this definition comports with industry understanding and longstanding Customs Service practice. *Id.* at 1139–40. Based on these findings, the trial court concluded that the refrigerated containers at issue are appropriately classified as "refrigerating equipment" under 661.35 TSUS.

We do not find the trial court's factual conclusions to be clearly erroneous. Therefore, we hold that the correct classification of the imported merchandise is under item 661.35 TSUS. Accordingly, the judgment of the Court of International Trade is

AFFIRMED.