ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Nauset Construction Corporation | ) | ASBCA Nos. 61673, 61675 |
| | ) | |
| Under Contract No. W912SV-13-C-0007 | ) | |

APPEARANCES FOR THE APPELLANT:     John J. McNamara, Esq.
                                                                    Elise M. Kuehn, Esq.
                                                                      Lane McNamara LLP
                                                                      Southborough, MA

APPEARANCES FOR THE GOVERNMENT:     Scott N. Flesch, Esq.
                                                                       Army Chief Trial Attorney
                                                                    CPT Philip L. Aubart, JA
                                                                    Harry M. Parent, III, Esq.
                                                                    MAJ Felix S. Mason, JA
                                                                      Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE YOUNG ON THE GOVERNMENT'S
PARTIAL MOTION TO DISMISS FOR LACK OF JURISDICTION

Pending before the Board is a motion filed by the Department of the Army (government or respondent) to dismiss two of the three appeals[1] filed by Nauset Construction Corporation (Nauset or appellant). The government argues that the Board lacks jurisdiction on ASBCA Nos. 61673 (Claim 1) and 61675 (Claim 2)[2] because the claims involved fraud. The government also argues that ASBCA No. 61675, to the extent it appeals a termination for default, is untimely. We grant the motion in part as it relates to ASBCA No. 61675, and deny the remainder.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On November 1, 2013, the National Guard Bureau (Guard) awarded a contract to Nauset for $20,521,858.00 to build the Unit Training Equipment Site Project in Camp Edwards, MA (the project) (R4, tab 1 at 2).

---

[1] A companion case, Appeal No. 61674, involves a subcontractor claim and is not included in the motion to dismiss.

[2] For simplicity's sake we will refer to the claim appellant filed on May 12, 2017, as "Claim 1" and the claim it later filed on February 12, 2018, as "Claim 2" (*see* app. opp'n at 1-2).

2. On May 12, 2017, Nauset submitted a certified claim (Claim 1) to the contracting officer (CO) for $2,563,622 plus an extension of time, from the inception of the contract through October 26, 2016 (R4, tabs 182-85).

3. On July 6, 2017, Nauset's attorney researched the "best avenue of relief, Armed Services Board of Contract Appeals or Federal Court of Claim for filing suit" (R4, tab 200 at 27-28).

4. On July 10, 2017, the CO informed appellant that due to ongoing investigations into Nauset by multiple government agencies that may affect her decision, she would not be able to render a decision within the 60 days required by the Contract Disputes Act, and that she would issue a decision by November 7, 2017 (R4, tab 186 at 2).

5. On September 27, 2017, Nauset's attorney researched "docketing dates" (R4, tab 200 at 30). On October 18, 2017, Nauset's attorney conducted "[r]esearch of entitlement to additional time to respond to notice of default," and on October 19, 2017, he conducted "[r]esearch [on] FAR regulations; Research case law regarding termination for default under FAR" (*id.* at 15).

6. On November 7, 2017, the CO informed Nauset that she was still reviewing the claim of May 12, 2017, that ongoing investigations by multiple government agencies may affect her decision, and that she would issue a decision on Claim 1 by January 8, 2018 (app. supp. R4, tab 204).

7. On November 17, 2017, the CO terminated the contract for default (R4, tab 39). The 24-page termination notice detailed the causes for termination and included the following language:

> [T]he Government is completely Terminating [sic] Nauset
> for Default on contract W912SV-13-C-0007.
>
> . . . This notice constitutes such decision, and Nauset has
> the right to appeal under the Disputes clause of the contract
> . . . . This notice constitutes a decision that the contractor
> is in default as specified and that the contractor has the
> right to appeal under the Disputes clause.
>
> . . . [T]his termination does not relieve Nauset of any and
> all liability relating to the outcome of the current

2

investigations by the Department of Labor, Army Criminal Investigative Department, and the Defense Criminal Investigative Service.

(R4, tab 39 at 23-24)

8. The termination letter did not include the appeal language required by Federal Acquisition Regulation (FAR) 33.211(a)(4)(v).

9. On November 17, 2017, the same day the termination letter was issued, Nauset's attorney reviewed "[the] Government's 23 page notice of termination of Nauset; [held] Teleconferences with Mark Williams regarding termination notice; Teleconferences with Anthony N. Papantonis regarding termination notice; Teleconference with Robin P. Wilcox of Traveler's regarding termination notice" and "review[ed] the Federal Acquisition Regulations regarding avenues of appeal" (R4, tab 200 at 17-18). On November 29, 2017, Nauset's counsel conducted "[r]eview of cases under Contract Dispute Act regarding default terminations" (*id.* at 18).

10. On November 28, 2017, during a telephone conference with counsel for Nauset, the government's attorney stated that "it is possible that this matter could be converted to a termination for convenience"[3] (app. opp'n at 2 (citing McNamara aff. ¶ 5)).

11. On January 8, 2018, the CO informed appellant that she was still reviewing Claim 1 in coordination with legal and other advisors, and that due to the ongoing investigations by multiple government agencies that may affect her decision, she was unable to render a decision at that time. The CO stated that she would issue a decision on the claim by April 1, 2018. (R4, tab 197 at 3)

12. On January 17, 2018, 61 days after the termination notice, Nauset's project manager submitted a letter to the CO, titled "Response to Termination of November 17, 2017 and Certified Termination Claim and Request for Final Decision under the Contract Disputes Act" (R4, tab 198). In the letter, Nauset responded to the issues identified by the CO in the termination letter, disputed the termination and

---

[3] We note the government's objection to the inclusion of this statement in the record. The government argues that the statement, to the extent that it was made, was a communication covered by Federal Rule of Evidence 408, Compromise Offers and Negotiations, which prohibits the use of a statement made during compromise negotiations to prove the validity of a claim (gov't reply at 3). The Federal Rules of Evidence are not binding on the Board, but may guide the Board's rulings. *See* Board Rule 10(c). We will weigh the evidentiary value of this statement as appropriate.

stated that it intended to submit a second claim for costs not included in Claim 1. Appellant stated: "Nauset takes exception to the government's decision to terminate for default . . . . Nauset will continue to vehemently invest every available resource to support our Claim, our position and reputation" (R4, tab 198 at 14). Although the subject of the letter included the words "Certified Termination Claim and Request for Final Decision Under the Contract Disputes Act," Nauset did not include certification language nor request anywhere else in the letter a decision by the CO. Nauset's letter did not explicitly state that it wished to appeal the termination decision to the Board or to any other tribunal.

13. The CO acknowledged receipt of the January 17, 2018 letter by email of January 17, 2018, stating "email received" (app. supp. R4, tab 207).

14. On February 12, 2018, 87 days after the termination notice, appellant submitted to the CO a certified claim (Claim 2), titled "Claim for Extended Time and Unpaid Completed Contract Work – Part 2 and Wrongful Termination" (R4, tab 200). In Section I of the letter, Nauset asserted that the causes of termination were beyond its control and demanded payment of $1,076,189.00 for costs incurred from November 2016 until the date of termination in November 2017[4] (id. at 1-2). Section II of the letter, "Wrongful Termination," reflects that "Nauset intends to defend its position and prove that the government's decision to terminate was based on [circumstances] beyond our control" (id. at 3). Section II concludes with this statement: "Nauset specifically asserts that the termination was wrongful as a matter of fact and as a matter of law. Nauset specifically submits this wrongful termination claim in accordance with the Contract Disputes Act." (Id. at 4) Section III of the letter, titled "Request for Final Decision of the Contracting Officer Pursuant to the Contracts Dispute Act" requests that "the Contract [sic] Officer render a decision on the claim submitted by Nauset Construction Corp. within sixty (60) days of the date of this claim" (id.).

15. Nauset's letter of February 12, 2018, did not state it wished to appeal to the ASBCA or to any other tribunal.

16. The CO acknowledged receipt of Claim 2 via email on February 13, 2018, in a single word: "Received" (app. supp. R4, tab 208).

17. On March 26, 2018, the CO informed appellant that she was still reviewing Nauset's claims, and that due to the ongoing investigations, her projected decision date for both claims was July 1, 2018 (R4, tab 202).

18. On April 25, 2018, the government (including the CO) met with Nauset

---

[4] Nauset did not specify how many days of delay it wished to claim.

4

and Nauset's surety (app. supp. R4, tab 210). The minutes of the meeting reflect that the purpose of the meeting was to "assist the Surety in moving forward" (*id.* ¶ 8). The minutes reflect that Nauset's counsel inquired whether the government would be willing to rescind the termination (*id.* ¶ 16). The government responded that "it was confident that the termination of the principal was impartial, factually supported, properly executed and includes a number of grounds for termination that collectively and in some cases individually by themselves, would provide an appropriate basis for the termination findings" (*id.* ¶ 19).

19. On May 24, 2018, counsel for the Guard wrote to the attorneys for Nauset and the Surety responding to previous correspondence to coordinate a meeting between the attorneys (app. supp. R4, tab 211 at 1). The letter states: "At this time, the Government will not rescind the default termination" (*id.*). The letter further states that "the Government . . . clearly and unequivocally . . . re-state[s] our position . . . . The Government does not desire Nauset to be involved in the completion effort. The Government is required to contract with responsible contractors . . . . Nauset's actions have given rise to serious concerns about its contractor responsibility." (*Id.* at 1-2) Further, the letter states that "the Government **cannot assent** to the use of Nauset in the completion effort due to contractor responsibility concerns" (*id.*) (emphasis in original) (footnote omitted).

20. On June 27, 2018, Nauset appealed to the Board the deemed denial of Claims 1, 2, and the default termination.

21. On June 30, 2018, the CO informed appellant that due to ongoing investigations into Nauset by multiple government agencies including the Army Criminal Investigations Division and US Department of Labor, her projected decision date was now October 1, 2018 (app. supp. R4, tab 212).

22. On October 1, 2018, the CO informed Nauset that she was still reviewing Claims 1 and 2, that there were multiple government agencies investigating Nauset including the Army Criminal Investigative Division, and that she would issue a decision by November 1, 2018 (app. supp. R4, tab 214).

23. On November 1, 2018, the CO issued a letter to appellant containing the following language:

> The purpose of this letter is to provide a response to your 12 May 2017 and 12 February 2018 claims received by the National Guard for Contract No. W912SV- 13-C-0007. I have reviewed all of the facts pertinent to this claim with the assistance of legal as required by FAR§ 33.211.

5

> As I have previously informed you, the claims and this matter have been referred to investigative agencies. *See* FAR 33.209 ("If the contractor is unable to support any part of the claim and there is evidence that the inability is attributable to misrepresentation of fact or to fraud on the part of the contractor, the contracting officer shall refer the matter to the agency official responsible for investigating fraud").
>
> Based on preliminary findings of the Army Criminal Investigation Division, the Defense Contract Audit Agency, as well as my review of the claimed cost, this office suspects that claimed costs are fraudulent or false. The National Guard is currently considering referral of this matter under the False Claims Act [FCA].
>
> FAR 33.210 states that a Contracting Officer's authority does not extend to the settlement, compromise, payment, or adjustment of any claim involving fraud. Therefore, I have no authority to take action on your claims.

(App. supp. R4, tab 215)

24. Appellant asserts that throughout 2018, Nauset continued to meet with the government, Nauset's surety, and counsel in regard to the project and Nauset's termination (app. opp'n at 3 (citing Papantonis aff. ¶ 29)).

25. On November 7, 2018, the CO's representative issued a Notice to Comply (the notice) to Nauset and to the Surety. The notice stated that Nauset had failed to comply with contract drawings and that water was leaking into the building, that the problems had been identified in a walk-through conducted on October 12, 2018, and that they needed to be resolved immediately (app. supp. R4, tab 216).

26. In response to the notice, Nauset and two subcontractors met with the government on December 4, 2018 (app. opp'n at 4 (citing Williams aff. ¶ 20, Papantonis aff. ¶ 34)).

27. Appellant asserts that December 13, 2018 was Nauset's last day on the project site (app. opp'n at 4 (citing McNamara aff. ¶ 21, Papantonis aff. ¶ 35)).

28. On February 6, 2019, the Army Criminal Investigation Command, Major

6

Procurement Fraud Unit, issued a memorandum stating that it "has an open, active investigation on [appellant] concerning the Massachusetts Army National Guard's construction project at the unit Training Equipment Site (UTES) project, Camp Edwards, MA" (gov't reply, ex. 2).

DECISION

The motion before us challenges our jurisdiction in two distinct areas. First, the government argues that the Board lacks jurisdiction on ASBCA Nos. 61673 and 61675 because the claims involved fraud. Secondly, the government argues that ASBCA No. 61675, to the extent it appeals a termination for default, is untimely. We examine each part of the motion in turn.

I. Does the Board lack jurisdiction over the claims in ASBCA Nos. 61673 and 61675 because the claims involved fraud?

The government argues that the CO had no authority to decide the claims because they involved fraud and accordingly the Board lacks jurisdiction over the deemed denial of the claims. Appellant opposes the motion, arguing that the CO's refusal to issue a decision based on a mere suspicion of fraud is not enough to deprive the Board of jurisdiction.[5]

We first examine the language of the applicable statute and regulation. The Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, states that an agency head has no authority to "settle, compromise, pay, or otherwise adjust any claim *involving* fraud." 41 U.S.C. § 7103(c)(1) (emphasis added). The FAR provides a similar limitation on the CO's authority, establishing that the CO has no authority to decide or resolve "any claim *involving* fraud." FAR 33.210 (emphasis added). Additionally, the FAR provides that in case of "*suspected* fraudulent claims . . . the CO shall refer that matter to the agency official responsible for investigating fraud." FAR 33.209 (emphasis added).

When interpreting a statute we look first to the language of the statute itself. If that language is unambiguous our inquiry stops, unless there is a clearly expressed legislative intention contrary to the language of the statute itself. *See LSI Computer Sys., Inc. v. United States Int'l Trade Comm'n*, 832 F.2d 588, 590 (Fed.Cir.1987). This is sometimes called the "plain meaning" rule. As there appears to be no ambiguity in the CDA and FAR language quoted above, we examine the plain

_____

[5] Appellant also argues that the CO's refusal to issue a decision upon suspicion of fraud amounts to an indefinite stay, as the investigation into the suspected fraud may take an undetermined amount of time. We do not reach this issue, as we decide the motion on other grounds.

7

meaning of the terms at issue. According to the NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010), to "involve" means "to include (something) as a necessary part or result." In contrast, to "suspect" means "to have an idea or impression of the existence, presence, or truth of (something) without certain proof." *Id.* It becomes clear that "involve fraud" and "suspect fraud" are not interchangeable. The record shows that the CO referred the suspected fraud to the investigative agencies, as required by the FAR, but she took her suspicion a step further: because she *suspected* fraud in Nauset's claims, she concluded that the claims *involved* fraud and that she had no authority to resolve them. In other words, substituting the terms for the definitions above, the CO had "an idea or impression of the existence, presence, or truth of fraud without certain proof" and concluded that the claims "included fraud as a necessary part or result." As explained further below, we do not agree that a CO's articulation of a suspicion of fraud is sufficient to deprive the Board of jurisdiction.

In a recent decision, *ESA South, Inc.*, ASBCA Nos. 62242, 62243, 20-1 BCA ¶ 37,647, the CO issued a letter declining to issue a final decision due to a suspicion of fraud after the appellant appealed to the Board the deemed denial of its claim. The Board held:

> We do not agree that the contracting officer's 2020 letter divests us of jurisdiction to entertain these 2019 appeals. If it did, the government presumably could defeat any appeal before this Board simply by presenting to the Board a letter from the contracting officer written after the filing of the appeal articulating the contracting officer's suspicion that the claim underlying the appeal was fraudulent. We do not agree that section 7103(c)(1) [of the CDA] goes that far. Indeed, discussing that section we have said that "[we] have jurisdiction under the CDA to decide the contract rights of the parties even when fraud has been alleged," "we possess jurisdiction over an appeal if we do not have to make factual determinations of fraud," and "[t]hat fraud allegedly may have been practiced in the drafting or submission of . . . [a] claim does not deprive this Board of jurisdiction under the CDA."

*ESA South,* 20-1 BCA ¶ 37,647 at 182,772 (citing *Sand Point Servs., LLC*, ASBCA Nos. 61819, 61820, 19-1 BCA ¶ 37,412 at 181,859).

The government relies on *PROTEC GmbH*, ASBCA No. 61161 *et al*., 18-1 BCA ¶ 37,010, for the proposition that when a CO's final decision is based upon a suspicion of fraud there is no CDA jurisdiction (gov't mot. at 6). The government's reliance is misplaced. In *PROTEC* the Board found jurisdiction because the final

8

decision was grounded "exclusively in disputed contract issues . . . . [and was] not based upon – let alone solely based upon – a suspicion of fraud . . . ." *PROTEC*, 18-1 BCA ¶ 37,010 at 180,244. The government also offers *Medina Constr., Ltd. v. United States*, 43 Fed. Cl. 537(1999) and *Savannah River Nuclear Sols., LLC v. Dep't of Energy*, CBCA No. 5287, 17-1 BCA ¶ 36,749 for the same proposition. The Board rejected this argument in a recent decision, *Mountain Movers/Ainsworth-Benning, LLC*, ASBCA No. 62164, 20-1 BCA ¶ 37,664 at 182,868. Accordingly, we conclude the government's reliance on these cases inapposite.

The government also argues that the fact that there are ongoing investigations lends support to the CO's determination that the claims involved fraud (gov't mot. at 6, gov't reply at 6). We disagree. The fact that there is an ongoing investigation does not divest the Board of jurisdiction in a matter otherwise properly before the Board. *ESA South*, 20-1 BCA ¶ 37,647 at 182,772 (citations omitted).

In its ultimate analysis, in order to resolve the jurisdictional motion at hand, the government asks the Board to agree with the CO's determination that she had no authority to resolve the claims because they involved fraud. It is well settled that we possess jurisdiction over an appeal if we do not have to make factual determinations of fraud. *ESA South*, 20-1 BCA at 182,772. The Board has previously held that it "can maintain jurisdiction over a [separate defense] involving . . . fraud as long as it does not have to make factual determinations of the underlying fraud." *Laguna Constr. Co. v. Carter*, 828 F.3d 1364, 1368 (Fed. Cir. 2016); *see Supply & Service Team GmbH*, ASBCA No. 59630, 17-1 BCA ¶ 36,678 at 178,602 (following *Laguna*). In this vein, the Board has maintained jurisdiction, for example, when a finding of fraud is made by another authority competent to make such a finding. *See Laguna*, 828 F.3d at 1368-69 (citing *AAA Eng'g & Drafting, Inc.*, ASBCA No. 48729, 01–1 BCA ¶ 31,256 at 154,367 (Board had jurisdiction where the government alleged fraud in contract administration, and the United States Court of Appeals for the Tenth Circuit had already determined that the contractor had committed fraud)); *see also Laguna Constr. Co.*, ASBCA No. 58324, 14-1 BCA ¶ 35,748 at 174,947-48 (the Board declined to make factual findings of fraud, but admitted into the record the guilty pleas of Laguna's officers entered in the United States District Court for the District of New Mexico, which the Board found helped "explain and support" how Laguna breached the contract). In the appeal before us, the record does not support that a finding of fraud in these claims has been made by an authority competent to make such a finding. We decline to make such a finding ourselves.

However, whether the claims involved fraud is not operative to resolve the jurisdictional matter before us. The essential fact before us is that two claims were presented to the CO and she declined to issue a decision on those claims. Under the CDA, the Board has jurisdiction over a CO's final decision (41 U.S.C. § 7104(a)) and over the deemed denial thereof (41 U.S.C. § 7103(f)(5)). Our jurisdiction attached

9

when Nauset filed an appeal from the deemed denial of its claims, after the CO continued to delay, again and again, issuing a decision on the pending claims (SOF ¶¶ 4, 6, 11, 17). The CO's letter determining she had no authority to decide the claims, issued after appellant appealed the deemed denial to the Board, does not change this result. "Once the Board is vested with jurisdiction over a matter, the contracting officer cannot divest it of jurisdiction by his or her unilateral action." *Mountain Movers/Ainsworth-Benning, LLC*, 20-1 BCA ¶ 37,664 at 182,869 (citing *Triad Microsystems, Inc.*, ASBCA No. 48763, 96-1 BCA ¶ 28,078 at 140,196).

For the reasons discussed above, we conclude that we have jurisdiction to hear Nauset's appeal of the CO's deemed denial of Claims 1 and 2, docketed as ASBCA Nos. 61673 and 61675.

### II. Does the Board lack jurisdiction over the termination for default in ASBCA No. 61675 because it was untimely appealed to the Board?

The government argues that ASBCA No. 61675, to the extent it appeals a termination for default,[6] was not filed with the Board within 90 days of the termination and accordingly the Board lacks jurisdiction. The termination for default was issued and received by appellant on January 17, 2018. Thus, the government concludes that the 90-day appeal period expired on February 15, 2018. It is undisputed that appellant appealed the termination to the Board on June 27, 2018 (SOF ¶ 20). Appellant argues that the appeal is not time-barred because (1) the government's conduct vitiated the finality of the termination for default; (2) appellant effectively appealed the termination for default to the Board by notice to the CO and thus tolled the 90-day clock; and (3) the termination notice failed to provide appeal language and thus prejudiced appellant. We examine each argument in turn.

#### 1. Did the government's conduct vitiate the finality of the termination for default?

Under the CDA, 41 U.S.C. § 7104 (a), the CO's decision must be appealed to the Board within 90 days. The 90-day period is jurisdictional and may not be waived. *See Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390-91 (Fed. Cir. 1982); *Maria Lochbrunner*, ASBCA Nos. 57235, 57236, 11-2 BCA ¶ 34,783 at 171,186. We have recognized that the finality of a termination may be vitiated by acts of the government: "The test for vitiation of the finality of the CO's decision 'is whether the contractor presented evidence showing it reasonably or objectively could have concluded the CO's decision was being reconsidered.'" *Aerospace Facilities Group, Inc.*, ASBCA 61026, 18-1 BCA ¶ 37,105 at 180,605 (quoting *Sach Sinha and Assocs.,*

---

[6] As explained further below, Nauset submitted its disagreement with the termination as a claim, rather than as an appeal from the termination for default.

10

*Inc.*, ASBCA No. 46916, 95-1 BCA ¶ 27, 499 at 137,042). In *Aerospace Facilities*, "written and oral communications with the government [subsequent to the termination] created a cloud of uncertainty as to the status of the . . . termination." 18-1 BCA ¶ 27, 499 at 180,605. However, a request to the CO to reconsider a final decision is not in itself sufficient to vitiate the termination decision. *Id.* (citing *Propulsion Controls Engineering*, ASBCA No. 53307, 01-2 BCA ¶ 31,494 at 155,508 ("it is unreasonable to conclude that a [CO] is reconsidering a final decision simply as a result of a request to do so.")). It is well settled that the government's actions must have occurred within the 90-day jurisdictional window in order to vitiate the finality of the termination. *See Godwin Corp.*, ASBCA No. 61410, 18-1 BCA ¶ 37,073 at 180,450 (finding that the CO's alleged agreement to review additional evidence submitted six months after the termination notice could not have had any effect on appellant's understanding of the termination's finality during the appeal period because the 90-day appeal window to the Board had already expired at the time that the CO allegedly made this representation (*see also Shafi Nasimi Constr. and Logistics Co.*, ASBCA No. 59916, 16-1 BCA ¶ 36,215 at 176,698)).

In the appeal at hand, Nauset argues that it reasonably believed the CO agreed to review her termination decision (app. opp'n at 9-15). Appellant argues that since the CO acknowledged receipt of Nauset's letters of January 17, 2018, and February 12, 2018, Nauset reasonably believed that the CO "accepted Nauset's [Claim 2] and would review her decision in regard to Nauset's termination" and that "this reasonable expectation . . . is supported by the [CO's] letter of March 26, 2018, [stating] that she was <u>still</u> reviewing Nauset's [Claim 2]" (app. opp'n at 13) (emphasis in original). These arguments are not persuasive. First, it is not reasonable for appellant to believe the CO was reconsidering the termination decision based on the cryptic acknowledgements of receipt (SOF ¶¶ 13, 16) of Nauset's submissions. Second, "it is unreasonable to conclude that a [CO] is reconsidering a final decision simply as a result of [appellant's] request to do so" *Propulsion Controls Engineering*, 01-2 BCA ¶ 31,494 at 155,508. Lastly, the CO's correspondence of March 26, 2018, was issued outside the 90-day window to appeal to this Board, so it could not have had any effect on appellant's understanding of the finality of the termination during the appeal period. *Godwin Corp.*, 18-1 BCA ¶ 37,073 at 180,450.

Nauset also argues that several communications between its attorney and government counsel vitiated the finality of the termination. Nauset asserts that on November 28, 2017, government counsel conveyed to appellant's counsel that it was possible that the termination for default could be converted to a termination for convenience (app. opp'n at 13; *see* SOF ¶ 10). Nauset argues that this conversation led it to believe that the CO was reconsidering the termination. We view this conversation as a statement made between lawyers in the midst of legal discussions, and conclude that it does not support a reasonable belief by appellant that the CO was reconsidering her decision. Nauset also argues that its counsel spoke with the

government's attorney "multiple times about the termination" (app. opp'n at 13) but we note that the supporting affidavit by Nauset's attorney is careful to state that *a meeting* between the parties was discussed extensively in the late fall 2017 and early spring of 2018 (McNamara aff. ¶ 6). Appellant also asserts that Nauset continued to meet with the government through 2018 in regard to the project and the termination (app. opp'n at 14; SOF ¶ 24). We note, however, that the record does not show that the CO was part of any of these conversations. For these reasons, we hold that these communications between the government and Nauset were not sufficient to reasonably lead Nauset to believe that the CO was reconsidering the termination.

Nauset also points to the meeting with the government on April 25, 2018 (SOF ¶ 18), the letter of May 24, 2018 (SOF ¶ 19) and the notice to comply issued on November 7, 2018 (SOF ¶ 25) as indicia that the CO was reconsidering the termination decision. These events took place after February 15, 2018, when the 90-day appeal window closed, and could not have had any effect on appellant's understanding of the finality of the termination during the appeal period. *See Godwin Corp.*, 18-1 BCA ¶ 37,073 at 180,450.

Appellant provided no evidence of government conduct during the 90-day appeal period that could have led the contractor to reasonably believe that the CO's decision was being reconsidered. Accordingly, we find that the government's conduct did not vitiate the finality of the CO's decision. *See, e.g., Shafi Nasimi Constr. and Logistics Co.*, 16-1 BCA ¶ 36,215 at 176,698.

### 2. Did appellant's Claim 2 submitted to the CO effectively appeal the termination for default to the Board and toll the 90-day clock?

Filing an appeal with the CO may satisfy the Board's notice requirement. *Aerospace Facilities*, 18-1 BCA ¶ 37,105 at 180,604 (citing *Hellenic Express*, ASBCA No. 47129, 94-3 BCA ¶ 27,189 at 135,503 ("filing an appeal with the [CO] is tantamount to filing with the Board" (citation omitted)). The Board has historically taken a liberal reading of contractor's communications to the CO in finding effective appeals. *Aerospace Facilities*, 18-1 BCA at 180,604 (citing *Thompson Aerospace, Inc.*, ASBCA Nos. 51548, 51904, 99-1 BCA ¶ 30,232 at 149,570). *See also Afghan Active Group (AAG)*, ASBCA 60387, 16-1 BCA ¶ 36,349 at 177,211. Adequate notice to the CO must be (1) in writing, (2) express dissatisfaction with the CO's decision, and (3) manifest an intent to appeal the decision to a higher authority (*Aerospace Facilities*, 18-1 BCA at 180,604 (citing *McNamara-Lunz Vans & Warehouses, Inc.*, ASBCA No. 38057, 89-2 BCA ¶ 21,636 at 108,856)).

As to the third requirement, i.e. manifest an intent to appeal the decision to a higher authority, "'[w]hile the Board historically has interpreted contractors' communications liberally in determining whether an intent to appeal exists, the record

reasonably must demonstrate an intent to appeal to the Board in order for our jurisdiction to attach.'" *Bahram Malikzada Constr. Co.*, ASBCA Nos. 59613, 59614, 15-1 BCA ¶ 36,134 at 176,370 (quoting *Oconto Elec., Inc.*, ASBCA No. 36789, 88-3 BCA ¶ 21,188 at 106,939, *aff'd*, 884 F.2d 1399 (Fed. Cir. 1989) (unpublished table decision)). Thus, in *Aerospace Facilities*, we found that a letter stating that "'we will appeal your decision through the various avenues open to us' adequately expressed the contractor's intent to appeal as a contractor can only 'appeal' to the Board." 18-1 BCA ¶ 37,105 at 180,604. However, a contractor's letter indicating [it] would appeal to either the Board or the Claims Court [is] not a notice of appeal because the CDA requires a notice of appeal to express an election of the forum in which it will seek relief. *Stewart-Thomas Indus., Inc.*, ASBCA No. 38773, 90-1 BCA ¶ 22,481 at 112,836.

In the appeal at hand, Nauset argues that its submission to the CO on February 12, 2018, satisfied the Board's notice requirement, as it was in writing, expressed dissatisfaction with the CO's decision, and manifested an intent to appeal the decision to higher authority (app. opp'n at 20-21). We agree that Nauset fulfills the first two requirements, but the third prong fails. Nauset's letter of February 12, 2018, (SOF ¶ 14) asserts that the termination was wrongful and submits a claim to the CO for additional costs. In this letter, appellant does not express an intent to appeal the termination to higher authority, and the word "appeal" does not appear anywhere in Nauset's letter. We examined appellant's letter of January 17, 2018, to ascertain whether, if read together with the letter of February 12, 2018, it may convey appellant's intent to appeal the termination. In the letter of January 12, 2018, appellant expresses its disagreement with the termination and states it intends to submit a new claim (SOF ¶ 12). The letter states that Nauset will "continue to vehemently invest every available resource to support our claim, our position and reputation" (*id.*), but it fails to express Nauset wishes to appeal the termination for default. Although we have historically construed liberally the language of a notice of appeal, Nauset's letters fail to express an intent to raise appellant's plight to an authority higher than the CO, and we hold that they do not suffice as a notice to appeal to the Board. *See Ft. McCoy Shipping & Svcs.*, ASBCA No. 58673, 13 BCA ¶ 35,429 at 173,794.

> 3. Was appellant prejudiced by the CO's failure to provide appeal language in the termination letter?

Nauset argues that although the termination letter gave notice that it had the right to appeal under the Disputes clause, the CO failed to provide the appeal rights as required by the FAR and Nauset was prejudiced by this omission. Appellant asserts that because the termination letter did not provide the appeal language, it did not set in motion the 90-day period to appeal to the Board. The government argues that the omission of appeal rights in the termination letter did not prejudice appellant because appellant was represented by counsel throughout the performance of the contract, and

counsel conducted research on its appeal rights so appellant was aware of its rights to appeal the termination decision.  We agree.

The termination letter included the following language:  "This notice constitutes [a termination] decision, and Nauset has the right to appeal under the Disputes clause of the contract . . . .  This notice constitutes a decision that the contractor is in default as specified and that the contractor has the right to appeal under the Disputes clause (SOF ¶ 7).

The contract incorporated by reference FAR 33.211(a)(4)(v) (SOF ¶ 1) which requires that a termination include language substantially as follows:

> This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

We have consistently held that "'when confronted with contracting officer decisions that only advise the contractor that it may appeal under the Disputes clause, omitting additional details of its rights, the Board has required the contractor to prove it was actually prejudiced by the omission, or that the contractor detrimentally relied upon it, to avoid the 90-day limitation period.'" *Shafi Nasimi Constr. and Logistics Co.*, 16-1 BCA ¶ 36,215 at 176,697 (quoting *Mansoor Int'll Dev.t Servs.*, ASBCA No. 58423, 14-1 BCA ¶ 35,742 at 174,926).  *See also Access Personnel Servs., Inc.*, ASBCA No. 59900, 16-1 BCA ¶ 36,407 at 177,517.  We have also consistently held that a termination for default is a government claim, and starts the 90-day clock as a final decision of the CO.  *Western Trading Co.*, ASBCA No. 61004, 18-1 BCA ¶ 37,030 at 180,304 (citing *Bushra Co.*, ASBCA No. 59918, 16-1 BCA ¶ 36,355 at 177,238).

Nauset states that it was prejudiced because it "did not understand that the Notice of Termination was a final decision of the contracting officer that was appealable to the ASBCA within ninety (90) days" (Papantonis aff. ¶ 9; *see* app. opp'n at 18; app. sur-reply at 3).

The facts before us suggest that Nauset did not understand the distinction between filing a claim with the CO and appealing a termination for default, which is a contracting officer's final decision (COFD) that must be appealed to the Board within

14

90 days of the termination. The January 17, 2018, letter states that Nauset intends, sometime in the future, to dispute the termination decision (SOF ¶ 12). Indeed, in its letter of February 12, 2018, to the CO, Nauset states that it intends to defend its position, that Nauset submits its wrongful termination claim in accordance with the Contract Disputes Act, and that in accordance with the CDA, Nauset requests that the CO render a final decision on its certified claim disagreeing with the termination within 60 days (SOF ¶ 14). This letter denotes Nauset's intent to file a *claim* against the default termination with the CO instead of an *appeal* with the Board, showing that Nauset did not understand that a termination for default is in itself a government claim, and starts the 90-day clock as a final decision of the CO. *Western Trading Company*, 18-1 BCA ¶ 37,030 at 180,304. The record does not explain the genesis of this confusion. However, we note that appellant's counsel conducted research on termination rights several times.

The record demonstrates that Nauset's attorney conducted extensive research on termination rights on the same day the termination letter was issued, including review of the "Government's 23 page notice of termination" which directed Nauset to the Disputes clause, and "[r]eview of Federal Acquisition Regulations regarding avenues of appeal" (SOF ¶ 9). On November 29, 2017, appellant's counsel researched "cases under Contract Dispute Act regarding default terminations" (*id.*). On July 6, 2017, Nauset's attorney researched the "best avenue of relief, Armed Services Board of Contract Appeals or Federal Court of Claims for filing suit" (SOF ¶ 3). On September 27, 2017, Nauset's attorney researched "docketing dates" (SOF ¶ 5). On October 18, 2017, Nauset's counsel conducted "[r]esearch of entitlement to additional time to respond to notice of default" and on October 19, 2017, he conducted "[r]esearch [on] FAR regulations; research case law regarding termination for default under FAR" (*id.*) Additionally, appellant's counsel was involved throughout the performance of the contract and termination process, and discussed the termination at length with the government (SOF ¶¶ 10, 18, 24). The contract incorporates by reference the Disputes clause (SOF ¶ 1) and the termination letter directs Nauset's attention to that clause, stating "Nauset has the right to appeal under the Disputes clause of the contract" (SOF ¶ 7). Given the amount of research conducted by counsel, and counsel's involvement throughout the performance and termination of the contract, we find it hard to believe that appellant was unaware of its appeal rights under the Disputes clause even if the termination letter did not include the language required by the FAR. Considered together, these facts do not support appellant's assertion that it was prejudiced by the termination letter's omission of appeals rights language. Accordingly, we conclude that the 90-day appeal period was not tolled (*see Access Personnel*, 16-1 BCA ¶ 36,407 at 177,517).

The 90-day period within which the CO's decision must be appealed to the Board is jurisdictional and may not be waived, and appellant failed to appeal the

COFD within the 90-day window. Accordingly, we do not have jurisdiction over ASBCA No. 61675.

## CONCLUSION

For the reasons above, the Board asserts jurisdiction over the claims in the appeals docketed as ASBCA Nos. 61673 and 61675. To the extent ASBCA No. 61675 also appeals a termination for default, that portion of the appeal is time-barred and is hereby dismissed for lack of jurisdiction.

Dated: May 5, 2021

LIS B. YOUNG
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61673, 61675, Appeals of Nauset Construction Corporation, rendered in conformance with the Board's Charter.

Dated:  May 5, 2021

PAULLA GATES LEWIS
Recorder, Armed Services
Board of Contract Appeals